PER CURIAM.
In these consolidated appeals, M.C. (the Father) and R.C. (the Mother) appeal an order terminating their parental rights to their youngest child, E.C. Although several issues were raised on appeal, we write to address only the issue of whether it was fundamental error for the trial court to terminate the parental rights to E.C. under section 39.806(l)(e)(l), Florida Statutes (2006), when the case plan that was approved by the court and relied upon by the parties throughout the proceedings was not filed in the court file. We conclude that the error is not fundamental based on the specific facts of this case, and therefore, we affirm.
I. FACTS
This proceeding involves the youngest child of a family of six children. This child, E.C., was born on June 30, 2005. Shortly before E.C. was born, the Mother tested positive for cocaine. The Mother went into labor at twenty-eight weeks and refused to remain in the hospital. She received no prenatal care. E.C. was born premature at twenty-nine weeks’ gestation, weighing just over two pounds. E.C. was placed in the neonatal intensive care unit, where she was intubated for breathing assistance. At the time of E.C.’s birth, both E.C. and her Mother tested positive for cocaine and marijuana. E.C. was immediately sheltered.
Almost a year before E.C.’s birth, the other five children were removed from their parents. The removal of the other children occurred on July 26, 2004. These children were adjudicated dependent on February 23, 2005, at which time the Father was provided with a case plan. The *712 Mother was provided with a case plan on April 22, 2005. The Mother was noncom-pliant with her case plan with regard to the older children at the time E.C. was sheltered. Additionally, several months before E.C.’s birth, the Father was arrested for possession of marijuana and for violation of the probation he was serving for domestic violence, and as a result, he was incarcerated at the time of E.C.’s birth.
Immediately before E.C.’s birth, the Department of Children and Family Services prepared an addendum to the existing case plans. The addendum was dated June 29, 2005. The addendum discussed new parental behavior that placed the children at risk. Among other things, the addendum described incidents of domestic violence by the Father and positive drug tests of the Mother. And, although the addendum was dated the day before the birth of E.C. and it failed to list E.C., it discussed the Mother’s presentation to the hospital while she was in her twenty-eighth week of pregnancy with E.C. and her departure from the hospital in contravention of the advice by medical personnel. The addendum required both the Father and the Mother to undergo substance abuse evaluation and treatment and the mother to undergo a mental health evaluation.
The Department filed a petition for dependency as to E.C., and a hearing on the petition was held on July 28, 2005. Both of E.C.’s parents and their attorneys were present at this hearing. The trial court adjudicated E.C. dependent as to each parent, and in orders filed on August 17, 2005, nunc pro tunc to July 28, 2005, the court accepted and approved the “case plan dated June 29, 2005.”[1]
After the case plan order was entered, regularly scheduled judicial review hearings took place every several months over the next three years, and both parents were present at two of the judicial review hearings. The permanency hearing and judicial review social study reports; the reports and recommendations of the general magistrate on the permanency hearings, judicial reviews, and case plan reviews; and the trial court’s orders on the general magistrate’s reports and recommendations all list E.C. along with the parents’ other children.
Subsequent to the entry of the case plan orders, both parents had ongoing problems with substance abuse. The Mother tested positive for cocaine and marijuana on January 4, 2006, and May 15, 2007, and she tested positive for marijuana on September 29, 2005, and February 16, 2006. Additionally, the Mother failed to respond to multiple referrals for drug testing subsequent to E.C.’s birth. She failed to submit to drug screenings on July 14, 2005; February 7, 2007; March 8, 21, and 30, 2007; April 11 and 13, 2007; and May 9, 2007. She did not attend any drug screenings between the middle of 2006 and January 2007.
The Father remained incarcerated until September 2005. He tested positive for marijuana on September 29, November 4, and November 18, 2005. In the early part of 2006, he failed to attend drug screenings and failed to complete a substance abuse evaluation despite multiple referrals. When he submitted to drug screenings in early 2006, he tested positive for marijuana two times. Between February 2 and September 28, 2007, the Department made twenty-five referrals for drug screenings. The Father failed to appear for many of *713 those screenings, and he tested positive for marijuana on February 28, 2007, just eight days after the Department filed the petition for termination of parental rights in this case. The Department also made multiple referrals for the Father’s substance abuse evaluation, and he failed to appear for six scheduled appointments. Ultimately, he completed the evaluation but not until the filing of the petition for termination of parental rights. He began an eight-week treatment program just one month prior to the adjudicatory hearing on the petition for termination of parental rights, but he failed to complete the program.
The Department filed the petition to terminate the rights of the parents as to five of the six children on February 20, 2007.[2] On June 27, 2008, after numerous hearings, the trial court denied the petition to terminate the parental rights of the parents to four of the children on the basis that termination was not in the manifest best interests of those children. The trial court readjudicated those children dependent. The trial court terminated the parental rights of both parents as to E.C. on the basis of the parents’ substantial noncompliance with the case plan pursuant to section 39.806(l)(e)(l).
The record in this case reflects that the parents have been working on their case plan for their children since February and April 2005. And, significantly, at no time during the course of the three-year period during which E.C. was sheltered did the parents ever assert that E.C. was not in-eluded in the case plan adopted by the court.
Both parents testified at the termination hearings that they knew they needed to complete their case plan in order to be reunited with their children, yet they both acknowledged that they had not completed their case plan at the time of the hearings. The case workers testified that both parents failed to complete the substance abuse task in their ease plan. The Mother failed to follow through with approximately forty drug screens. The Father testified that he was aware that he was required to receive substance abuse treatment under the case plan but that he had not completed that task at the time of the hearing.[3] A case worker testified that at the time of the hearing, the Father had not completed the domestic violence task in his case plan. The Mother also failed to complete the domestic violence task. A case worker testified that neither parent had provided proof of stable income or stable housing. The Father lived in a one-bedroom apartment and earned $350 every two weeks in a job he had held for only one month delivering papers for a church. He could not remember the name of the church.
The record demonstrates that the parents have been in and out of jail during the course of the proceedings: the Father was incarcerated for possession of marijuana and violation of probation for domestic violence at the time of E.C.’s birth, and the Mother was incarcerated for possession of cocaine at the time of the termination hearings.
*714 The record also demonstrates that the four older children, who have been placed back with their parents, endured terrible hardships while in foster care and that all of them suffer from numerous and severe emotional handicaps. E.C. was three years old at the time of the final termination hearing and has been with the same foster parents since she was sheltered. Her foster parents wish to adopt her.
II. APPLICABLE LAW
In order to grant a petition for termination of parental rights, the trial court must find that the Department proved the allegations supporting termination by clear and convincing evidence. E.E.A. v. Dep’t of Children & Family Servs., 846 So.2d 1250, 1251-52 (Fla. 2d DCA 2003). The trial court must then find that the Department proved a statutory ground for termination of parental rights under section 39.806 and that termination is in the manifest best interests of the child under section 39.810. Rathburn v. Dep’t of Children & Families, 826 So.2d 521, 523 (Fla. 4th DCA 2002). In addition, the Department must establish that termination of parental rights is the least restrictive means of protecting the child from harm. E.E.A., 846 So.2d at 1252.
The Florida Supreme Court has explained that the appellate court’s task on review is not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute [its] judgment for that of the trier of fact. Instead, [it] will uphold the trial court’s finding “[i]f, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court’s judgment in favor of terminating ... parental rights.”
G.W.B. v. J.S.W., 658 So.2d 961, 967 (Fla.1995) (quoting Kingsley v. Kingsley, 623 So.2d 780, 787 (Fla. 5th DCA 1993)). Where the trial court’s finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence, the appellate court has no choice but to affirm. See D.S. v. Dep’t of Children & Families, 842 So.2d 1071, 1072 (Fla. 4th DCA 2003). “Our standard of review is highly deferential. A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in eviden-tiary support.” N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003).
III. ANALYSIS
On appeal, both parents argue that the trial court erred in granting the petition to terminate as to E.C. because no case plan regarding E.C. was ever filed with the trial court. During the three years of the proceedings before the trial court, however, neither of the parents ever objected on this basis. In the absence of an objection, the error must be fundamental in order to receive appellate review. Sanford v. Rubin, 237 So.2d 134, 137 (Fla.1970). Fundamental error is error that “goes to the foundation of the case or goes to the merits of the cause of action.” Id. An appellate court “should exercise its discretion under the doctrine of fundamental error very guardedly.” Id.
Section 39.806(l)(e)(l) provides that a ground for termination may be established “[w]hen [the] child has been adjudicated dependent, a case plan has been filed with the court,” and “[t]he child continues to be abused, neglected, or abandoned by the parent or parents.” The failure of a parent to substantially comply with a case plan constitutes evidence of continuing abuse, neglect, or abandonment. It appears from the record that at the time of the termination hearing, the case plan, in- *715 eluding the addendum, as to E.C. had not been technically “filed with the court.” However, it appears that this technical omission was inadvertent. The case plan was reviewed and approved by the court after E.C. was born, the addendum to the case plan made reference to the Mother’s visit to and departure from the hospital during the Mother’s twenty-eighth week of pregnancy, and the case plan was continually reviewed by the court throughout the year and a half prior to the filing of the petition for termination and throughout the next year and a half prior to the termination hearings. Cf. Y.F. v. Dep’t of Children & Family Servs., 893 So.2d 641, 642 (Fla. 2d DCA 2005) (holding that trial court erred in granting petition for termination of parental rights based on noncompliance with case plan when case plan was not filed and approved by the court until seven months after petition for termination was filed).
Several judicial review hearings were held in the case, and the sole purpose of such hearings was to monitor the parents’ progress on completing their case plans as to all of their children. Even though the parents testified at the termination hearings that they were confused about certain tasks of their case plan, it is clear that the parents were aware of the case plan and that they were aware that they were required to perform their tasks in order to be reunited with their children. In fact, both parents argued at the termination hearings that they complied or attempted to comply with their case plan tasks. At no point during the numerous judicial reviews that took place over the three years during which E.C. was sheltered did the parents object on the basis that no case plan applied to E.C. The parents cannot now be heard to complain for the first time on appeal that no case plan applied to E.C. We conclude, under the unique facts of this case, that any error in failing to file the case plan with the court does not go to the foundation or the merits of the case and is therefore not fundamental error.
IV. CONCLUSION
The trial court’s order finding that the parents failed to substantially comply with their case plans[4] and that termination is in the best interests of the child is supported by competent, substantial evidence. Accordingly, we affirm the trial court’s order terminating both parents’ rights to E.C.
Affirmed.
KHOUZAM and MORRIS, JJ., Concur.
WALLACE, J., Dissents with opinion.

. The record does not contain a separate case plan dated June 29, 2005. The case plan addendum, however, was entered on June 29, 2005. The addendum was not included as part of the trial court record until the pen-dency of this appeal.

. The oldest child had reached the age of eighteen and was no longer dependent.

. As explained in the dissenting opinion, the December 2004 case plan required the Father to (1) maintain adequate housing, (2) maintain stable income, (3) successfully complete an approved parenting program, (4) complete family counseling, (5) complete an approved domestic violence class, and (6) commit no further law violations. The requirement that the Father receive substance abuse treatment was a task set forth in the addendum to the case plan dated June 29, 2005. Based on the Father’s testimony, it is clear that he was aware of the addendum to the case plan.

. We do not agree with the dissent’s conclusion that even if a case plan had been created as to E.C., the circumstances that caused the creation of the case plan in regard to the Father had been remedied at the time of the termination hearing. While the dependency order references the Father’s abandonment of E.C. due to his incarceration, the case plan addendum requires the Father to complete a substance abuse task, which he failed to complete before the termination of his parental rights. We believe that in light of this task and the existing case plan tasks as to the other children, who had been adjudicated dependent as to both parents only a few months before, the Father’s incarceration was not the only circumstance that caused the creation of the case plan as to E.C.