NORTHCUTT, Judge.
On the petition of the Department of Children and Family Services, the circuit court terminated the parental rights of N.F., the mother of a three-year-old. However, at the final hearing the Department failed to prove any grounds for termination. Therefore, we reverse the termination of N.F.’s parental rights.
In September 2009, N.F. was involved in a physical altercation with her boyfriend and she was arrested and jailed. At the time of the arrest, N.F.’s young daughter was at the home of a babysitter. N.F. failed to alert the babysitter about her arrest or to arrange for the care of her child during her incarceration. The child’s *1190 paternal grandparents learned of the situation several days later, and they took her into their home. After petitioning for and obtaining a shelter order, the Department approved the paternal grandparents as custodians of the child. N.F. consented to a dependency in October 2009.
The Department offered N.F. a case plan with a goal of reunification. By June 2010 she had completed most of her required tasks. In light of her progress, her case manager conducted a home study in preparation for reunifying her with her daughter. But N.F.’s residence was found to be unsuitable because her roommate had substance abuse problems and was involved in a dependency matter in another county. At about the same time, the paternal grandparents decided that they could no longer care for N.F.’s daughter. The Department placed the child with a foster family in a non-adoptive placement. In July 2010, a new case manager was assigned to the case. She intended to recommend that the child be reunified with her mother at a status hearing scheduled for September 1, 2010.
N.F. failed to attend that hearing. The case manager contacted her the next day and met with her on September 14. N.F. was remorseful and said that she had overlooked the hearing because of her work schedule. Then, on October 6, 2010, N.F. missed a scheduled visitation with her daughter. The case manager drove to N.F.’s residence and found her asleep. When questioned about the missed visit, N.F. replied “I overslept and I took my meds, what’s the big deal?” She had been prescribed a medication containing codeine, and she recounted that she had taken one of the pills for a bad toothache.
In an October 7, 2010, written status review, the case manager recommended reunifying the mother and child after N.F. completed two weekend visits with her daughter. But on the very day that the case manager made that recommendation, the circuit court convened a hearing on its own motion “to reconsider the permanency review.” Thereafter, the court entered an order reflecting that at the hearing the Department announced its decision to change the permanency goal from reunification with the child’s mother to adoption. The order stated:
[T]he Court finds the mother has an attitude that goes beyond irresponsible. She has a lackadaisical attitude. The child is 3-years old and the mother has disappointed the child. It cannot be good for the child to have an on-again/ off-again motherhood relationship with this mother.
The court suspended N.F.’s visitation and all contact with her daughter.
On October 11, 2010, the Department filed a petition to terminate N.F.’s parental rights. The petition asserted that N.F. had materially breached her case plan, § 39.806(l)(e), Fla. Stat. (2010); that she had abandoned the child, § 39.806(l)(b); and that she had engaged in egregious conduct threatening the child’s life or well-being, § 39.806(l)(f).
The final hearing on the petition was begun in January 2011 and completed in March 2011. In the interim, N.F. was again arrested for domestic violence against her boyfriend.
Ultimately, the circuit court entered an order terminating N.F.’s parental rights based solely on section 39.806(l)(e). The order contained findings of fact that, for purposes of our discussion, we have numbered one through three. They were:
[One.] This court finds that the State has proven by clear and convincing evidence that the mother, [N.F.], had failed to substantially comply with the provisions of her case plan for a period of *1191 nine (9) months after an adjudication of dependency or placement in shelter care. The court has considered the evidence that the mother did, in fact, complete several classes included in her case plan (parenting, individual counseling, BIP [Batterers Intervention Program]). However, while the mother completed a substance abuse course, she continued to fail to appear for random, mandated screenings. The mother completed BIP and attended anger management classes, but thereafter exhibited angry and unstable language and behavior including a domestic battery arrest on the eve of her trial on the State’s termination of parental rights petition. The mother completed a parenting course but repeatedly demonstrated a lack of attachment or bonding to her child. The mother clearly has not learned from her case plan nor has she demonstrated change.
[Two.] That the mother ... deprived the child of, or allowed the child to be deprived of, necessary food, clothing, shelter, or medical treatment, or the mother ... allowed the child to live in an environment when such deprivation or environment caused the child’s physical, mental, or emotional health to be significantly impaired or in danger of being significantly impaired.
[Three.] That the child is at substantial risk of prospective neglect in that the mother, despite attending case plan courses, has not learned from them.
In our review, we are mindful that in order to terminate a parent’s rights to her child, the Department must prove the allegations of its petition by clear and convincing evidence. See J.C. v. Dep’t of Children & Family Servs., 6 So.3d 643, 648 (Fla. 2d DCA 2009) (and cases cited therein). The Florida Supreme Court has defined “clear and convincing evidence” as an “intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.” In re Davey, 645 So.2d 398, 404 (Fla.1994). When considering a termination petition, the circuit court must first decide whether the Department proved the asserted grounds for termination by clear and convincing evidence, and then it must determine whether the manifest best interests of the child would be served by termination, again under the same evidentiary standard. See § 39.810. Finally, the Department must establish that termination of parental rights is the least restrictive means of protecting the child from harm. J.C., 6 So.3d at 643; E.E.A. v. Dep’t of Children & Family Servs., 846 So.2d 1250, 1251-52 (Fla. 2d DCA 2003).
Our standard of review in parental rights termination cases is highly deferential. “ ‘A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support.’ ” R.C. v. Dep’t of Children & Family Servs., 33 So.3d 710, 714 (Fla. 2d DCA 2010) (quoting N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003)). Thus, we review the circuit court’s ruling for evidentiary support and legal correctness. D.P. v. Dep’t of Children & Family Servs., 930 So.2d 798, 801 (Fla. 3d DCA 2006).
After careful examination of the record, we conclude that the circuit court’s ruling in this case was not supported by the evidence or the law. Taking the court’s findings in order:
*1192 Substantial Compliance with the Case Plan (Finding One)
The circuit court’s first finding set forth above specifically addressed the ground for termination contained in section 39.806(l)(e). To support a termination on this ground, the Department must show that the child has been adjudicated dependent, that the parent has been offered a case plan, and that “the child continues to be abused, neglected, or abandoned.” § 39.806(l)(e).
Continuing abuse, neglect, or abandonment may be evidenced by a parent’s failure to “substantially comply” with her case plan for a period of nine months. Id. “‘Substantial compliance’ means that the circumstances which caused the creation of the case plan have been significantly remedied to the extent that the well-being and safety of the child will not be endangered upon the child’s remaining with or being returned to the child’s parent.” § 39.01(73); see also R.F. v. Dep’t of Children & Family Servs., 22 So.3d 650, 654 (Fla. 2d DCA 2009); E.R. v. Dep’t of Children & Family Servs., 937 So.2d 1196, 1198 (Fla. 3d DCA 2006). Thus, failure to “substantially comply” with a case plan is a term of art for a shortcoming that bears directly on the behavior that endangered the child’s safety or well-being. Whereas a failure to “substantially comply” with a case plan can be evidence of abuse, neglect, or abandonment, the circuit court may not terminate a parent’s rights simply because he or she failed to perform tasks in the case plan. R.F., 22 So.3d at 654.
In its finding on this ground, the circuit court acknowledged that N.F. completed “several classes included in her case plan (parenting, individual counseling, [Batterer’s Intervention Program]).” In fact, at the termination hearing it was undisputed that N.F. had completed all of her case plan tasks before the Department filed its termination petition in October 2010. However, the court concluded that N.F. had not “learned from her case plan” or “demonstrated change” based on three circumstances.
First, the circuit court complained that “while the mother completed a substance abuse course, she continued to fail to appear for random, mandated screenings.” Insofar as this finding implied that N.F. had been noncompliant with this case plan task, it was contrary to the evidence. At the termination hearing, the Department presented the testimony of a counselor who conducted N.F.’s mandated drug screens. The counselor recounted that N.F. skipped several scheduled drug screens early in the dependency, in late 2009 and early 2010. Otherwise, she missed an appointment in August 2010 and was one day late for an appointment in September 2010. All told, N.F. appeared for eighteen drug screens and tested negative in all but three. In those three instances, she had been taking prescribed medication that would cause a positive test. Thus, the court’s assertion that N.F. “continued to fail to appear” for her drug screens was incorrect.
But even if the circuit court’s characterization were accurate, it could not serve as a legal basis for terminating N.F.’s parental rights. As mentioned, simply failing to complete a case plan, as such, is not ground for terminating parental rights. Rather, evidence of neglect or abuse can only be based on a failure to “substantially comply,” i.e., fail in a case plan task that bears on the circumstances that caused the creation of the plan. Here, that circumstance was N.F.’s failure to make arrangements for her daughter’s care when she was arrested. There was no allegation or evidence that N.F. had a substance abuse problem, let alone one that endangered her daughter’s safety or well-being. See R.F., *1193 22 So.3d at 653 (reversing termination of parental rights on ground of parents’ continuing drug abuse in absence of showing that drug use harmed children); M.H. v. Dep’t of Children & Families, 866 So.2d 220, 222 (Fla. 1st DCA 2004) (same). Therefore, the court’s implication that N.F. had not complied with mandatory drug screenings, even if true, could not legally support a termination of her parental rights.
The circuit court’s second assertion regarding N.F.’s purported noncompliance with her case plan was that, notwithstanding her completion of an anger management class and a batterer’s intervention program, she “exhibited angry and unstable language and behavior including a domestic battery arrest on the eve of her trial.” This finding, too, was inaccurate to the extent that it implied the court heard evidence of a course of angry or violent behavior. It did not. In fact, the recent domestic battery arrest was the only record suggestion that N.F. had been violent at any time since her child was sheltered in 2009. Beyond N.F.’s concession simply that she had pushed her boyfriend, the circumstances of the incident were not explored at the termination hearing.
Regardless, again, the circumstance that caused the creation of the case plan was not any alleged violence on N.F.’s part. It could not have been because there was no allegation that the child witnessed or was harmed by the incident. See R.V. v. Dep’t of Children & Family Servs., 939 So.2d 200 (Fla. 2d DCA 2006) (reversing dependency order where evidence failed to show that child witnessed and was harmed by act of domestic violence). Therefore, N.F.’s single act of pushing her boyfriend prior to the continuation of the termination hearing — an incident that could not have endangered the child because the circuit court had cut off contact between N.F. and her daughter — was not a failure to “substantially comply” with the case plan for purposes of the statute.
Finally, the circuit court complained that N.F. had completed a parenting course “but repeatedly demonstrated a lack of attachment or bonding to her child.” This finding was, plainly and simply, untrue.
At the termination hearing, the Department presented testimony from a psychologist who had evaluated N.F. in February 2010. The results of tests that he administered “suggest[ed] that the parent has a difficult time attaching,” not just to the child, but to others in general. But the psychologist did not observe the mother in the presence of her child. And, notably, he did not opine that she was not bonded with the child. At the time of the evaluation, the psychologist recommended that N.F. take a parenting course, that she complete a domestic violence program, and that she seek individual therapy. Indeed, N.F.’s case plan included those very tasks. And according to her case manager, she had completed them all before the Department filed its termination petition in October 2010.
N.F.’s therapist testified that she conducted a biophysical examination in November 2009 and recommended that N.F. begin individual therapy. After initially missing some therapy sessions, N.F. began therapy in earnest in May 2010 and had attended her sessions regularly ever since. The therapist helped N.F. work through her problems with anger, depression, manic thoughts, and lack of coping skills. At one point, the therapist recommended that N.F. take medication, and she began doing so. In a session on September 2, 2010, N.F. reported that the medication was making her drowsy but that it had been helpful in improving her mood and concentration. In November 2010, N.F. again said that the medication was making her *1194 lethargic and that she was also struggling with mood swings and concentration. At the termination hearing, the therapist confirmed that lethargy and drowsiness were known side effects of the medication N.F. was taking. The therapist did not recount observing the mother and child together, nor did she opine that N.F. was not bonded with her child. Indeed, no one at the hearing testified to any observable fact that would support a finding that N.F. “repeatedly demonstrated a lack of attachment or bonding to her child.” To the contrary, beginning at least as early as the summer of 2010 and continuing until the very day in October 2010 that the circuit court sua sponte undertook to “revisit the permanency review,” the Department recommended reunifying the child with her mother. In September 2010, N.F.’s case manager prepared a status report in which she noted that “[t]he mother has been responsible for transporting [her daughter] to all medical appointments. [The child] and her mother, [N.F.], have a close bond.” (Emphasis supplied.) In her October 7, 2010, status report, the case manager wrote that the child was crying and asking for her mother at the foster home.
Nevertheless, at the termination hearing the case manager testified at the Department’s behest that N.F. could not care for the child because “all services have already been provided” and N.F. had not been able to demonstrate a “change in behavior.” She did not detail any facts that might have explained why she had come to this opinion after recommending reunification in September and October 2010. She did not specify what “change in behavior” N.F. had failed to make, or how that failure had been manifested.
At one point during the case manager’s testimony, the Department’s attorney posed a litany of questions that simply parroted the manifest best interests factors set forth in section 39.810, Florida Statutes (2010). For example:
Q. Has the mother demonstrated the ability or disposition to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law?
See § 39.810(2). The case manager answered this and the other questions derived from section 39.810 with a simple “no.”[1] The Department did not elicit any facts that would explain the case manager’s negative conclusions.
On cross-examination, the case manager was confronted with the fact that the termination petition, which she prepared, alleged that N.F. failed “to substantially comply with the provisions of the case plan.” She conceded in court that N.F. had actually completed all of her assigned tasks. She also acknowledged that the petition she signed alleged that N.F. had abandoned her daughter. But when repeatedly pressed to identify facts that supported the allegation, the manager finally admitted that it “would have been at shelter” in September 2009 and that after the shelter hearing N.F. had in no way abandoned her daughter.
The Department’s evidence from the guardian ad litem was equally perfunctory. The guardian who testified at the hearing had been assigned to the case after the petition for termination was filed, i.e., after the circuit court had suspended N.F.’s contact with the child, and therefore the guardian had never observed the mother and child together. The Department’s counsel asked the guardian if she had re *1195 viewed the case file, met with the child, and met with the mother, to which the guardian answered “yes.” The Department’s next question was: What is your recommendation for permanency for the child?” The guardian responded, simply, “termination of parental rights.” Again, the Department elicited no facts upon which this recommendation was grounded.
When all was said and done, the evidence reflected just three isolated missteps on N.F.’s part: She missed a hearing and a -visitation at a time when she was suffering lethargy and drowsiness from medications prescribed as part of the therapy required in her case plan, and she pushed her boyfriend when the child was not present and could not have been by virtue of the circuit court’s order preventing N.F.’s contact with her. By statutory definition, those incidents did not constitute a failure to “substantially comply” with N.F.’s case plan. They certainly did not prove that she “repeatedly demonstrated a lack of attachment or bonding to her child” and had not “learned from her case plan” or “demonstrated change.”
In short, the Department’s position amounted to nothing more than parroted statutory phrases and bald incantations of buzz words. Such conclusory assertions, devoid of factual support, were not competent substantial evidence — let alone clear and convincing evidence — of anything. See C.D. v. Dep’t of Children & Families, 974 So.2d 495, 502 (Fla. 1st DCA 2008) (deeming “hollow assertions” of caseworker and guardian ad litem unsupported by identifiable facts insufficient to support order denying motion for reunification); Norris v. Norris, 926 So.2d 485, 488 (Fla. 2d DCA 2006) (holding that parenting coordinator’s conclusory opinion unsupported by factual basis was not competent substantial evidence to support determination of child’s school placement).
Deprivation of Food, Clothing, Shelter, or Medical Treatment (Finding Two)
Parental rights may be terminated under section 39.806(l)(e) if, after a case plan has been offered, the parent continues to neglect the child. But the circuit court’s second finding quoted above was merely a restatement of the definition of neglect found in section 39.01(44). The court did not apply the definition to the facts of this case, and the established facts did not support the finding.
There was no evidence that N.F. had ever deprived her child of any need, either before the 2009 shelter petition or since. To be sure, N.F.’s failure to contact her babysitter when she was arrested in 2009 conceivably could have caused the child to be deprived of food, clothing, or shelter, but no evidence suggested that this happened. Absolutely no evidence supported a finding that the child’s “physical, mental, or emotional health” was significantly impaired by N.F.’s action.
Substantial Risk of Prospective Neglect (Finding Three)
“Prospective neglect” is generally a facet of termination sought pursuant to section 39.806(l)(c), i.é., “the parent ... engaged in conduct toward the child ... that demonstrates that the continuing involvement of the parent ... in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child.” See, e.g., R.F., 22 So.3d at 653; M.H., 866 So.2d at 222. The Department’s petition against N.F. did not allege section 39.806(l)(c) as a ground for terminating her parental rights. Due process requires that the termination petition adequately inform a parent of the Department’s claims. Generally, a trial court errs when it bases a termination on grounds not asserted in the petition. Cf. *1196 C.J. v. Dep’t of Children & Family Servs., 9 So.3d 750, 755 (Fla. 2d DCA 2009).
Here, however, the circuit court’s third finding did not expressly rely on section 39.806(l)(c). Rather, the court’s assertion that N.F. posed a danger of prospective neglect was simply an extension of its finding that N.F. had not learned from her case plan and that her rights could be terminated under section 39.806(l)(e). As mentioned, that finding was wholly unsupported by evidence.
In any event, we note that prospective neglect often is found when the parent has some ongoing problem, such as alcohol or drug addiction. See R.F., 22 So.3d at 653; M.H., 866 So.2d at 222. In this case, N.F. showed continuing issues with anger control. She was arrested for battery on her paramour twice, and the dependency petition referred to earlier, unresolved allegations of domestic violence between N.F. and the child’s father. But the Department did not allege that N.F. had ever been angry with her daughter or had inappropriate physical contact with the child. Other than one remote-in-time incident with the child’s father related in the dependency order, there was no assertion that the child had witnessed or been affected by the mother’s battery of others or by their battery of her. Cf J.C., 6 So.3d, at 651. Certainly, the mother’s second arrest for battery on her paramour was a matter of concern. But the arrest itself, without any other information about the alleged crime, its circumstances, or the legal outcome, did not provide clear and convincing evidence that the child faced “prospective neglect” in N.F.’s care.
In conclusion, neither evidence nor law supported the ground for terminating N.F.’s parental rights set out in the court’s order, section 39.806(l)(e). The court made no findings that would justify termination on the other grounds alleged in the Department’s petition, abandonment, § 39.806(l)(b); or egregious conduct, § 39.806(l)(f); nor was any evidence offered to prove those grounds.
Accordingly, we reverse the order terminating N.F.’s parental rights to her daughter, and we remand for further proceedings.
SILBERMAN, C.J., and WHATLEY, J., Concur.

. We will not detail all the questions the Department asked the case manager based on the manifest best interest factors, but we note that they involved inquiries that basically parroted subsections (3), (4), (5), (6), and (7) of section 39.810.