NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

In the Interest of J.W., a child. )
)
———————————————— )
)
M.S., )
)
Appellant, )
)
v. )    Case No. 2D15-5005
)
DEPARTMENT OF CHILDREN AND )
FAMILIES and GUARDIAN AD LITEM )
PROGRAM, )
)
Appellees. )
———————————————— )

Opinion filed September 28, 2016.

Appeal from the Circuit Court for
Hillsborough County; Emily A. Peacock,
Judge.

Scott L. Robbins, Tampa, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Christopher Lumpkin and
Mary Soorus, Assistant Attorneys General,
Tampa, for Appellee Department of
Children and Families.

Laura E. Lawson, Sanford, for Appellee
Guardian ad Litem Program.

WALLACE, Judge.

M.S. appeals the order that terminated her parental rights to her child,

J.W., and the order that denied her "motion alleging ineffective assistance of counsel for

termination of parental rights proceedings and request to withdraw current counsel from

case." We affirm, without discussion, the denial of M.S.'s motion seeking a new

adjudicatory hearing based upon the alleged ineffective assistance of her court-

appointed counsel.[1] Although four of the five grounds found by the trial court for

termination are not supported by competent, substantial evidence, we affirm the

termination order based on the trial court's finding that it would be harmful to the child to

continue the relationship with M.S., an incarcerated parent, under section

39.806(1)(d)(3), Florida Statutes (2014).

## I. THE FACTUAL BACKGROUND

M.S. was known to the Department of Children and Families (DCF)

because of her ongoing failure to complete a case plan for her older child, S.S.

Because of M.S.'s substance abuse issues, S.S. had been sheltered in December 2011

and adjudicated dependent as to M.S. in 2012.[2] J.W. was born on May 14, 2013. On

---

[1]The Florida Supreme Court has recently recognized the right to effective assistance of counsel in proceedings involving the termination of parental rights and established an interim procedure for addressing such claims in cases in which parental rights are terminated. See J.B. v. Fla. Dept. of Children & Families, 170 So. 3d 780 (Fla. 2015).

[2]The record reveals that S.S. was born blind and with reactive airway disease, developmental delay, and Lennox-Gastaut syndrome (severe epilepsy). Because of her mental illness and drug addiction, M.S. did not provide S.S. with the care needed. S.S.'s foster mother, who has a medical background, subsequently adopted her.

May 17, 2013, DCF filed an affidavit and petition for placement in shelter alleging that J.W. was in danger because M.S. had failed to address her substance abuse and mental health issues and had failed to obtain stable housing and stable income. The trial court ordered that J.W., who was three days old, be placed in shelter care. Two weeks later, M.S. voluntarily consented to J.W. being adjudicated dependent.

While J.W. was sheltered, M.S. was arrested, along with J.W.'s father, for robbery with a deadly weapon and tampering with a witness. While in jail awaiting trial on the criminal charges, M.S. agreed to a reunification case plan that DCF offered in August 2013. In October 2013, the trial court accepted the reunification case plan that required M.S. to complete a substance abuse evaluation, any recommended treatment, and individual therapy. Under the case plan, M.S. also agreed to demonstrate stable housing and income and to pay child support. On December 4, 2013, M.S. pleaded guilty to armed robbery and a drug charge and was sentenced to three years in prison. The reunification case plan was set to expire on May 14, 2014, well before the estimated date of M.S.'s release from prison of January 23, 2016.[3]

On February 12, 2015, DCF petitioned to terminate M.S.'s parental rights to J.W. on the following grounds: (1) that M.S. had abandoned J.W., section 39.806(1)(b); (2) that M.S.'s continued involvement with J.W. threatened his life or safety regardless of the provision of services, section 39.806(1)(c); (3) that M.S. continued to neglect or abandon J.W. after a case plan had been filed, section 39.806(1)(e)(1); (4) that M.S. failed to comply with the case plan after the child had

_____

[3]The on-line records of the Department of Corrections reflect that M.S. was released from custody on January 17, 2016.

been in care for 12 of the last 22 months, section 39.806(1)(e)(3); and (5) that continuing the parental relationship with an incarcerated parent would be harmful to J.W., section 39.806(1)(d)(3). DCF also sought the termination of the parental rights of J.W.'s father, to whom M.S. was not married.

The trial court held an adjudicatory hearing on two separate days in August 2015. After the hearing, the trial court entered its order finding that DCF proved by clear and convincing evidence all of the grounds alleged for termination. The trial court also found that termination was in the best interest of J.W. and that termination was the least restrictive means of protecting the child from harm. The order terminated the parental rights of both M.S. and the child's father.

M.S. and the child's father filed separate appeals from the trial court's order.[4] On January 27, 2016, this court dismissed the father's appeal for failure to prosecute. J.W. v. Dep't of Children & Families, No. 2D15-4723, 2016 WL 818921 (Fla. 2d DCA Jan. 27, 2016). M.S.'s appeal has proceeded to this disposition on the merits.

## II. THE LEGAL BACKGROUND

The trial court must find that DCF proved grounds supporting termination under section 39.806 by clear and convincing evidence. E.E.A. v. Dep't of Children & Family Servs., 846 So. 2d 1250, 1251 (Fla. 2d DCA 2003). That finding is presumed

---

[4]The father's appeal was assigned to a different panel of this court. We note that the attorneys for both M.S. and the child's father failed to comply with this court's standard Notice to Attorneys and Parties requiring "all attorneys and unrepresented parties [to] advise this court of **related cases** currently pending or recently decided by this court." A failure by the attorneys for the parties to inform us of the existence of related cases in matters such as this not only disregards our reasonable request, it also makes our work more difficult and leads to the possibility of inconsistent results. See F.G. v. Dep't of Children & Families, 192 So. 3d 1250 (Fla. 3d DCA 2016).

correct but should be reversed if clearly erroneous or not supported by competent, substantial evidence. E.R.-J. v. Dep't of Children & Family Servs., 86 So. 3d 574, 579-80 (Fla. 2d DCA 2012). The trial court must then consider whether termination is in the manifest best interest of the child under section 39.810. Rathburn v. Dep't of Children & Families, 826 So. 2d 521, 523 (Fla. 4th DCA 2002). Finally, the trial court must find that termination of parental rights is the least restrictive means of protecting the child from harm. E.E.A., 846 So. 2d at 1252.

"Our standard of review in parental rights termination cases is highly deferential." N.F. v. Dep't of Children & Family Servs., 82 So. 3d 1188, 1191 (Fla. 2d DCA 2012). The trial court's ruling will be affirmed if, upon the competent, substantial evidence presented, there is any principle or theory of law that supports the judgment terminating parental rights. G.W.B. v. J.S.W., 658 So. 2d 961, 967 (Fla. 1995). "A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support." R.C. v. Dep't of Children & Family Servs., 33 So. 3d 710, 714 (Fla. 2d DCA 2010) (quoting N.L. v. Dep't of Children & Family Servs., 843 So. 2d 996, 999 (Fla. 1st DCA 2003)). "Thus, we review the circuit court's ruling for evidentiary support and legal correctness." N.F., 82 So. 3d at 1191 (citing D.P. v. Dep't of Children & Family Servs., 930 So. 2d 798, 801 (Fla. 3d DCA 2006)).

### III.  DISCUSSION

#### A.  Introduction

On appeal, M.S. contends that the trial court's findings are not supported by competent, substantial evidence. DCF properly concedes that the trial court's

findings regarding the grounds for termination under sections 39.806(1)(b), 39.806(1)(e)(1), and 39.806(1)(e)(3) are not supported by competent, substantial evidence.  However, DCF argues that competent, substantial evidence supports termination under section 39.806(1)(c) and section 39.806(1)(d)(3).  Thus we will limit our discussion of the grounds for termination to the two remaining grounds upon which DCF relies in support of the order under review: (1) harm to the child arising from the parent's continued involvement in the parent-child relationship under section 39.806(1)(c), and (2) harm to the child arising from the child's continued relationship with an incarcerated parent under section 39.806(1)(d)(3).

**B.  *Continued Involvement Under Section 39.806(1)(c)***

Section 39.806(1)(c) provides that grounds for termination of parental rights may be established

> [w]hen the parent or parents engaged in conduct toward the
> child or toward other children that demonstrates that the
> continuing involvement of the parent or parents in the
> parent-child relationship threatens the life, safety, well-being,
> or physical, mental, or emotional health of the child
> irrespective of the provision of services.

The trial court found that M.S. had been offered services via a reunification case plan but that M.S. failed to complete several of the case plan tasks, including individual therapy, substance abuse evaluation and treatment, child support, stable housing, and stable income.  The trial court also found that M.S. (1) was incarcerated and was not expected to be released until February 22, 2016; (2) was arrested and sentenced for robbery with a knife and for tampering with a witness; (3) did not then have a substantial or positive relationship with J.W.; (4) did not establish stable income or housing for J.W.'s entire life; and (5) did not demonstrate "a sustained duration of sobriety outside

6

of residential treatment or incarceration in a normal stressful everyday environment." From this, the trial court concluded that M.S.'s continued involvement threatened J.W.'s well-being.

Two of the trial court's findings regarding M.S.'s alleged failure to complete certain case plan tasks—individual therapy and substance abuse evaluation and treatment—are refuted by the record. The other three—child support, stable housing, and stable income—were tasks that were impossible for M.S. to attempt to complete until she was released from prison. Cf. D.N. v. Dep't of Children & Family Servs., 48 So. 3d 1035, 1036 (Fla. 2d DCA 2010) (holding that the trial court's finding that D.N. was non-compliant with his case plan because he could not provide stable housing or finances was insufficient to support the placement of D.N.'s child into a permanent guardianship because D.N.'s failure to achieve these two objectives was due to his incarceration during the pendency of the case). More important, and contrary to a specific factual finding of the trial court, there is no evidence that DCF had provided M.S. with any services with regard to J.W. either before or during her incarceration. See § 39.6012(1)(b) (detailing DCF's responsibilities in providing services).[5] Finally, as to the trial court's finding that M.S. "did not demonstrate 'a sustained duration of sobriety outside of residential treatment or incarceration in a normal stressful everyday environment,' " M.S. was unable to comply with this objective because she was incarcerated during the entire period of the case plan. However, the record does reflect that M.S. had made significant progress in an outpatient drug treatment and

---

[5]The record indicates that DCF may have provided M.S. drug treatment and parenting classes during the previous case plan for her older child, S.S.

rehabilitation program in which she participated while in prison. There is no reason that M.S. could not pursue these case plan objectives upon her release from prison. For these reasons, we conclude that the competent, substantial evidence in the record does not support termination of M.S.'s parental rights on the ground of continued involvement under section 39.806(1)(c).

## C. Harm to the Child Arising from a Continued Relationship with an Incarcerated Parent Under Section 39.806(1)(d)(3)

Section 39.806(1)(d)(3) permits termination based upon incarceration if "[t]he court determines by clear and convincing evidence that continuing the parental relationship with the incarcerated parent would be harmful to the child" and that termination is in the child's best interest. In 2012, an amendment[6] to the statute added five factors for the trial court to consider to assist it with this determination:

    a.   The age of the child.

    b.   The relationship between the child and the parent.

    c.   The nature of the parent's current and past provision for the child's developmental, cognitive, psychological, and physical needs.

    d.   The parent's history of criminal behavior, which may include the frequency of incarceration and the unavailability of the parent to the child due to incarceration.

    e.   Any other factor the court deems relevant.

§ 39.806(1)(d)(3)(a)-(e).

Here, the trial court found as follows: (a) J.W. was twenty-one months old; (b) J.W. did not have a relationship with M.S. because of her incarceration; (c) M.S. had

_____

[6]Ch. 2012-178, § 15, at 2322-23, Laws of Fla.

not provided for J.W.'s developmental, cognitive, psychological, and/or physical needs because of her incarceration; (d) M.S. was frequently incarcerated and unavailable to J.W. because of her incarceration and that M.S. had a history of substance abuse charges and convictions for armed robbery, possession of a controlled substance, and delivery of a controlled substance; and (e) because of her incarceration, M.S. had not established a positive or substantial relationship with J.W. or addressed her substance abuse issues and would miss a substantial period of the child's life, including his most important developmental years.

Based on these findings, the trial court concluded that "continuing the parental relationship with the Mother would be harmful to the child, and, for this reason, termination of parental rights of the incarcerated parent is in the best interest of the child." In its order, the trial court cited only section 39.806(1)(d), but the language of the order indicates that the trial court based its findings and conclusions on subsection (1)(d)(3) alone, as opposed to subsections (1)(d)(1) or (1)(d)(2), which provide alternative grounds for termination.[7]  However, in her initial brief on appeal, M.S. argues only that the trial court erred in terminating her parental rights under section 39.806(1)(d)(1). But the trial court did not cite or rely on this section at all, and the criteria for termination under subsection (1)(d)(1), which focuses on the period of time the parent is expected to be incarcerated balanced against the child's need for a permanent and stable home, are completely different from that of subsection (1)(d)(3),

---

[7]The trial court's order is a cut and paste from DCF's amended petition. The petition also cites only to section 39.806(1)(d), but the language in the petition is based on subsection (1)(d)(3) alone.

9

which requires a determination by clear and convincing evidence that continuing the relationship with the incarcerated parent would be harmful to the child.

In their answer briefs, both DCF and the Guardian ad Litem Program argue that M.S. has waived the issue of termination based on section 39.806(1)(d)(3) because of her failure to argue the point in her initial brief. After M.S. was put on notice of this critical omission, she did not move for leave to file an amended initial brief to address the point. Under these circumstances, we agree that M.S. has waived the point about the sufficiency of the evidence to support termination under 39.806(1)(d)(3) by failing to address it in her initial brief.[8] See City of Miami v. Steckloff, 111 So. 2d 446, 447 (Fla. 1959); Kenyon v. Kenyon, 496 So. 2d 839, 840 (Fla. 2d DCA 1986); Polyglycoat Corp. v. Hirsch Distribs., Inc., 442 So. 2d 958, 960 (Fla. 4th DCA 1983).[9] Only one ground is required for termination. S.B. v. Dep't of Children & Family Servs., 80 So. 3d 438, 439 (Fla. 2d DCA 2012); A.H. v. Dep't of Children & Families, 63 So. 3d

---

[8]M.S. did not file a reply brief.

[9]If M.S. had argued the point, we would have concluded that competent, substantial evidence supports the trial court's findings for termination under section 39.806(1)(d)(3). See Dep't of Children & Families v. J.S., 183 So. 3d 1177, 1185 (Fla. 4th DCA 2016) (holding that where an incarcerated father had no relationship with his child, the trial court erred in finding that continuing the parental relationship would not be contrary to the child's best interest under section 39.806(1)(d)(3)); R.M. v. Dep't of Children & Families, 847 So. 2d 1103, 1104 (Fla. 4th DCA 2003) (holding that section 39.806(1)(d)(3) does not require proof that actual contact with the incarcerated parent was detrimental to children and evidence that the possibility of the parent reclaiming his children after his incarceration would be extremely detrimental to the children's mental health was sufficient to support termination); but see C.B. v. Dep't of Children & Families, 874 So. 2d 1246, 1252-53 (Fla. 4th DCA 2004) (holding that despite the absence of a relationship between the mother and her child resulting from the mother's incarceration and that giving the mother an opportunity to complete a case plan would delay permanency for the child for at least one year, DCF had not established grounds for termination under section 39.806(1)(d)(3)). We note that the Fourth District's decisions in R.M. and C.B. predate the 2012 amendment to section 39.806(1)(d)(3).

874, 877 (Fla. 1st DCA 2011). Therefore, the insufficiency of the evidence to sustain the other grounds asserted for termination is of no consequence. See R.S. v. Dep't of Children & Families, 872 So. 2d 412, 413 (Fla. 4th DCA 2004).

## *D. Termination as in the Child's Best Interest and as the Least Restrictive Means*

The trial court properly found that termination was in J.W.'s manifest best interest under section 39.810 and that termination was the least restrictive means of protecting J.W. from harm in accordance with Padgett v. Department of Health & Rehabilitative Services, 577 So. 2d 565, 571 (Fla. 1991).

## IV. CONCLUSION

There is no way to resolve this case that is entirely satisfactory. We are mindful of the principle that "[p]arental rights are a 'fundamental liberty interest' that cannot be terminated based on incarceration alone." S.B. v. Dep't of Children & Families, 132 So. 3d 1243, 1247 (Fla. 1st DCA 2014) (quoting J.R. v. Dep't of Children & Family Servs., 923 So. 2d 1201, 1205-06 (Fla. 2d DCA 2006)). It is only natural to wish that M.S. could have a chance to find stability in her life, complete a case plan, and be reunited with her son. But a reversal of the trial court's order would result in a further delay in permanency for J.W. Moreover, M.S. has no relationship with her son. A reunification of J.W. with M.S. would be traumatic and harmful to him after he has spent all of the years of his early childhood development with his foster mother, who seeks to adopt him. It is regrettable that the relatively brief period of M.S.'s incarceration began only a few weeks after J.W.'s birth. The proximity of these events has resulted in a situation where M.S. will lose her parental rights to J.W. Although this outcome is unfortunate, we cannot elevate M.S.'s wish for a chance at reunification with her child

11

over J.W.'s opportunity for a secure and happy life in his current placement.  The legislative policy established in section 39.806(1)(d)(3) and our highly deferential standard of review compel us to affirm the trial court's termination order and to remand for further proceedings.  We also affirm the order denying M.S.'s motion based on her claim of ineffective assistance of counsel.

Affirmed.


KELLY and CRENSHAW, JJ., Concur.