DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**B.N.,** the Father,
Appellant,

v.

**STATE OF FLORIDA, DEPARTMENT OF CHILDREN OF FAMILIES,**
Appellee.

No. 4D19-3103

[April 1, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Luis Delgado, Judge; L.T. Case No. 50-2017-DP-000068-XXXX-SB.

David J. Joffe of Joffe Law, P.A., Fort Lauderdale, for appellant.

Andrew Feigenbaum of Children's Legal Services, West Palm Beach, for appellee.

Carly D. Stein of Allen Norton & Blue, P.A., Defending Best Interest Project, Tampa, and Thomasina F. Moore, Statewide Director of Appeals, and Laura J. Lee, Senior Attorney, Statewide Guardian Ad Litem Office, Tallahassee, for Guardian Ad Litem Program.

Elaine M. Martens, Legal Aid Society of Palm Beach County, West Palm Beach, for Foster Children's Project.

CIKLIN, J.

The appellant, B.N. ("the father"), challenges the order terminating his parental rights. Because competent substantial evidence did not support the trial court's findings that statutory grounds for termination were proven and that termination was the least restrictive means of protecting the child, we reverse.

The father's son was born on February 7, 2017. The following day, the child was sheltered based on *the mother's* incarceration and substance abuse. The father was not present at the hearing, as the Department of Children and Families ("the Department") was unable to locate him.

However, the father appeared at a continued shelter hearing two days later. He acknowledged paternity and requested a home study. The trial court granted him unsupervised visitation with the child.

On February 15, the Department petitioned for an adjudication of dependency as to the child. The grounds were abuse/prospective abuse and neglect/prospective neglect by the mother. The petition states that "[t]here are no allegations as to the legal father." On March 7, the mother entered a consent to the dependency petition.

In June, the guardian ad litem ("GAL") reported that the father was considered "nonoffending," and that he "has visited on a sporadic basis" and "has dragged out the home study process." The GAL further reported that the child was doing well in foster care. In July, a home study report provided that the father reported that his current residence was temporary and would not pass a home study due to the number of animals in the home. ChildNet[1] closed the home study "as the father does not have stable residence." The child was adjudicated dependent in September 2017.

In January 2018, the trial court directed the Department to conduct another home study for the father at his new residence, an apartment in Boca Raton. The home study was conducted in February 2018, and the Department reported there were no concerns regarding the condition of the home. However, the home study was denied, as the father had not provided proof of stable income and had not provided a valid ID.

In July, the GAL petitioned for termination of the mother's and father's parental rights.[2] In August, the father filed various documents with the court, certifying that they were also provided to the GAL and the Department. They included receipts from a toy store and receipts from a clothing store, "transaction receipts" for a bank account, a checking/savings account history, and a copy of a passport with valid dates from May 2018 to 2028.

In September, the GAL gave notice of its intent to hold the petition in abeyance. The father entered into a case plan. It required him to successfully complete parenting classes and follow recommendations, "supply proof of stable income and housing to meet the basic needs of the child," pay $70 a month for child support, and exercise unsupervised visitation on a specified schedule culminating in overnight visits upon an

---

[1] ChildNet serves as the Department's lead agency in Broward and Palm Beach Counties and provides various services.
[2] The mother entered a consent to termination of parental rights.

approved home study. The trial court approved the case plan in October and provided that the father could provide in-kind support to satisfy his child support obligation. The goal was reunification/adoption, and the goal date was January 2, 2019.

In March 2019, the GAL filed an amended petition for termination of parental rights. As grounds, the GAL alleged that the father failed to substantially comply with the case plan within 12 months of the child's sheltering, and that he allowed the child to remain in care for 12 out of the last 22 months and failed to substantially comply with the case plan.[3]

At the final hearing, the case manager supervisor for various case workers testified regarding the father's compliance and stated but "[r]ight now, I don't have a case manager assigned, so therefore I am the case manager supervisor and I oversee the case." There had not been a case worker assigned to the case since January 2019. Ms. Pejo was the last case worker assigned to the case. The case manager supervisor testified that ninety days is not the standard length for a case plan. But the father was considered "non-offending . . . [s]o we were giving him a case plan just to ensure that the child can go home." The father had never obtained an approved home study. The Department was in a position to offer financial assistance for rent, but no offer was made to the father, as he did not ask for assistance.

The case manager supervisor acknowledged that the father had provided a letter from his employer related to his income. When she attempted to explain why it was insufficient to prove his income, the trial court sustained a hearsay objection. The case manager supervisor also acknowledged that prior to the final hearing but after the expiration of the case plan, the father had complied with the task requiring proof of stable income. She could not provide the date the father submitted the income verification.

As for personal identification of the father, the case manager supervisor's testimony was less than clear. She indicated at one point that in order to approve a home study, the father needed to provide a valid driver's license. But later, she acknowledged that the father had provided her with a passport. She explained that it was expired. When she was asked whether a renewed passport would have sufficed as valid identification for purposes of the home study, she did not answer the question and instead complained that the father did not need to go

---

[3] The GAL also alleged that the father materially breached the case plan, an allegation that it later abandoned.

through the trouble of obtaining a passport when he could have simply obtained a driver's license. She claimed that the father never provided her with a copy of his renewed passport.

The case manager supervisor confirmed that the father provided diapers, baby wipes, and food for the child. She did not remember "seeing anything for toys."

With respect to housing, the case manager supervisor explained that before a home study can be approved, "[w]e need a valid address over a year." Otherwise, a home study cannot be approved. In January 2018, during a home study of the father's Boca Raton residence, the father provided a lease for the residence. But the home study was denied in part because the father had not provided a valid form of identification. The lease expired before the case plan began in October 2018.

The case manager supervisor acknowledged that the father completed his parenting classes and had exercised "the majority" of his visitation over the course of the time the child was in care. However, he had missed a significant amount of visitation in November. But she could not "tell you the number that he missed." No one had ever raised any concerns to her regarding the father's conduct during visitation. The father did not provide the required child support, but he did provide "a few receipts of things that he purchased."

The volunteer GAL was assigned the case in June 2017. Since then, she had visited the child once a month in the foster home. The child and foster parents had bonded. She observed visitation between the father and child only three times: once for thirty minutes, once for fifteen minutes, and once for two hours with the father behaving appropriately on each occasion. Based on these observations, she did not believe there was a bond between the father and child. She did not elaborate on what led her to this conclusion.

The father testified he was no longer living at the Boca Raton address because of a "rat problem." He had been living in Pompano Beach for 2 ½ months with a roommate. He had not provided his new address to the case manager: "I don't even know who my case manager is. . . . Ms. Pejo was my case manager until I got a text message saying that she had quit. . . . She quit and I don't know who took over her position." He acknowledged he had been given a "supervisor number." He requested a home study of his new residence.

4

According to the father, the child calls him "Poppy" and smiles "from ear to ear" when they see one another. He acknowledged that his roommate drew up a lease for his current residence even though she does not own the apartment. The father was paying her rent.

The trial court entered an order terminating the father's parental rights based on both grounds relied on by the GAL.

On appeal, the father argues that the GAL did not prove the grounds for termination, that termination is not in the manifest best interests of the child, and that termination is not the least restrictive means of protecting the child. We agree with the father as to the first and third arguments.[4]

This court has elaborated on the Department's burden in a termination case:

> A parent has a fundamental liberty interest in the care, custody and companionship of his child. *See Padgett v. Dep't of Health Rehab. Servs.*, 577 So. 2d 565, 570 (Fla. 1991). The only limitation on this right is "the ultimate welfare of the child itself[.]" *Id.* (quoting *State ex rel. Sparks v. Reeves*, 97 So. 2d 18, 20 (Fla. 1957)). Thus, to terminate a parent's rights in his or her child, the state must first meet the statutory requirements to prove a statutory ground for termination and prove that termination is in the manifest best interest of the child. *See* §§ 39.806, 39.810, Fla. Stat. (2012). Then, to satisfy constitutional concerns, it also must prove that termination is the least restrictive means to protect the child from serious harm. *See Padgett*, 577 So. 2d at 571. The state must present clear and convincing evidence to support each element.

*B.K. v. Dep't of Children & Families*, 166 So. 3d 866, 872-73 (Fla. 4th DCA 2015). The clear and convincing evidence standard requires that "[t]he evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." *In re N.F.*, 82 So. 3d 1188, 1191 (Fla. 2d DCA 2012).

---

[4] This disposition renders it unnecessary for us to reach the issue of whether termination of the father's rights was in the manifest best interest of the child.

On appeal, we review the trial court's ruling for competent substantial evidence. *See J.G. v. Dep't of Children & Families*, 22 So. 3d 774, 775 (Fla. 4th DCA 2009).

The GAL's termination petition was based on two grounds. The GAL alleged that the father failed to substantially comply with the case plan for a period of twelve months after an adjudication of the child as dependent or the child's placement into shelter care, whichever occurs first. *See* § 39.806(1)(e)1., Fla. Stat. (2019). The GAL also alleged that the child had been in care for any of the last 12 to 22 months and the father had not substantially complied with the case plan. *See* § 39.806(1)(e)3., Fla. Stat. Neither of these grounds support termination when "the failure to substantially comply with the case plan was due to the . . . failure of the department to make reasonable efforts to reunify the parent and child." § 39.806(1)(e)1., 3., Fla. Stat. Additionally, "the least restrictive means [are] those that offer the parent a case plan and time to comply with the plan so as to obtain reunification with the child." *C.A.T. v. Dep't of Children & Families*, 10 So. 3d 682, 684 (Fla. 5th DCA 2009) (quoting *In re K.W.*, 891 So. 2d 1068, 1070 (Fla. 2d DCA 2004)).

For certain, this case presents unique circumstances. The child did not come into care due to the father's conduct. But he remained in care due to the father's inability to obtain approval of a home study. There is no evidence the father ever harmed the child. The father was given a case plan almost eighteen months after the child came into care, and he was given three months to complete it. Housing was the main issue in this case from the beginning. The case manager supervisor testified that in order to approve a home study, the Department needs "a valid address over a year." It was not evident from the testimony that at the time of the home study on the Boca Raton residence, the father had resided there for a year. Yet, the evidence indicated that the home study was not denied on that ground. Rather, it was denied because the father did not provide sufficient proof of income and valid identification.

The case manager supervisor testified that the father could not obtain an approved home study until he provided proof of income and a valid identification. The case plan provided that the father could provide proof of stable income through bank statements. But the record reflects that before the father entered into the case plan, he had provided bank statements to the GAL and also provided a letter from his employer verifying employment. For some reason not addressed at trial, these documents were apparently deemed insufficient by the Department or the GAL, as the case plan still required the father to provide proof of stable income, which he could do, again, by providing bank statements. Also,

even though the case plan was for only three months, he was required to provide proof of income for six months. Curiously, at trial, the case manager supervisor testified that after the case plan expired, the father satisfied the proof of income task. But the only things he had submitted were more bank statements. Paradoxically, the evidence presented raises more questions than it resolves and we find as much.

The father was also required to provide valid identification in order to obtain an approved home study. The case manager supervisor initially testified that a driver's license was required and that the father's passport was expired. She denied that the father had eventually provided a renewed passport. But the record indicates that he did provide a copy of the renewed passport to the GAL and the Department before he entered into the case plan. When the case manager supervisor was asked whether the father's renewed passport would have sufficed, she did not answer the question and instead indicated that the father should not have gone to the trouble of getting a passport instead of a driver's license. Troublingly, this evidence also raises more questions than it resolves.

Finally, the case manager supervisor acknowledged that the Department offered the father no assistance with regard to housing. Even if the trial court's finding that the father had "sufficient income" to obtain stable housing is supported by competent substantial evidence, at a minimum, the Department failed to obtain a firm grasp on why the father still struggled to obtain stable housing. It appears to us that the Department must engage in a reasonable investigation and analysis before one may conclude that measures short of termination have been fruitless.[5] Under the circumstances of this case, "he didn't ask for help" is nothing more than the Department's failure to recognize the possible need for services, financial or otherwise, and to explore the matter to avoid a termination of parental rights, if possible.

Based on the record before us, we find no competent substantial evidence supporting the trial court's conclusions that the GAL proved, by clear and convincing evidence, the grounds alleged for termination and that termination is the least restrictive means of safeguarding the child.

---

[5] The evidence reflects that the father, although professing to have sufficient income to obtain stable housing, resided with the maternal grandmother in a residence not suitable for the child, resided with a roommate who did not own the property but drew up a lease for the father, and resided in a residence he had to leave upon discovery of a rat infestation. This begs the question: Why does the father have problems finding stable and suitable housing?

*Reversed and remanded for further proceedings.*

CONNER and KUNTZ, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**