DAMOORGIAN, J.
 

 This appeal arises from the trial court’s termination of T.O.’s (the father) and E.R.’s (the mother) parental rights to their four children, S.O., R.O., E.O., and M.O. These appeals have been consolidated for purposes of this opinion. Because there is competent, substantial evidence in the record to support the trial court’s order, we affirm the termination as to both parents. We write to address two of the issues raised by the parents in their appeals.
 

 On April 21, 2006, Department of Children and Families (DCF) filed a petition for adjudication of dependency for the four girls and their older brother, R.R.
 
 [1]
 
 In support of the petition, DCF alleged that, on or about March 19, 2006, the father held a rifle to the mother’s head and threatened to “blow [her] head off.” The father also threatened to kill R.R. When law enforcement arrived at the home, the mother stated that she was fearful for her own and her son’s safety because the father had been violent in the past. Soon after he was released from jail for this incident, the father resumed living with the mother and the children. The mother refused to obtain a restraining order against him because she needed his financial support. The family has a history of domestic violence, and both parents have criminal histories.
 

 On May 4, 2006, the trial court adjudicated the children dependent with the parents’ consent, and ordered the parents to enter into a case plan with DCF. DCF created a case plan with concurrent goals of reunification and adoption for the four girls. The plan included, among other things, psychological evaluations, parent effectiveness training, substance abuse evaluations, random drug testing, and domestic violence counseling for the parents. It also included assessments, therapy and counseling for the children.
 

 During the course of the case plan, E.O. began making statements that her father had sexually abused her and began exhibiting sexual behavior. As a result, the trial court ordered that the parents and children submit to psychosexual evaluations. The parents were also required to attend psychosexual counseling and the father was ordered to take a lie detector examination for therapeutic purposes. Through no fault of their own, it appears that the parents never received the psy-
 
 *175
 
 chosexual counseling. They completed the rest of the tasks in their case plans.
 

 On December 14, 2007, DCF filed a petition for termination of both parents’ rights to the four girls. The petition reiterated the allegations of domestic violence, and added allegations that the father had sexually abused E.O. and that the mother was aware of the abuse.
 

 Prior to the trial on the petition to terminate parental rights, DCF moved to admit E.O.’s and S.O.’s hearsay statements pursuant to section 90.803(28), Florida Statutes (2008).
 
 [2]
 
 The trial court conducted a pretrial hearing on the motion, as required by the statute. Various witnesses who had contact with E.O. and S.O. testified that the girls described violence between their parents and between their father and R.R. According to the girls, many of their father’s violent episodes occurred when he was drinking alcohol. S.O. stated that her father threatened to hit her when he was drunk, and that she was scared of him. The witnesses also testified that E.O. made statements indicating that her father had sexually abused her and displayed highly sexualized behavior for her young age. S.O. denied any sexual abuse.
 

 Two of the witnesses testified about E.O.’s reaction to seeing her father during a scheduled visit with her mother. E.O. screamed, could not talk, and clinched her fists. E.O. had a similar reaction when she saw her father at another visit with her mother.
 

 At the conclusion of the hearing, the parents’ attorneys conceded all of the requirements for admitting S.O.’s and E.O.’s hearsay statements except for the reliability of the statements. The trial court found the statements to be reliable and from trustworthy sources, and ruled them admissible.
 

 Both parents testified at the trial. The mother testified that she made up the story about the father holding the gun to her head because she was angry with him for refusing to give her money. After learning the signs of abuse in her domestic violence counseling, she did not believe she had been abused. Although she and the father had loud arguments, they never involved physical violence, and she was usually at fault for starting the arguments. She did not believe that the father had sexually abused E.O. She testified that someone, possibly one of E.O.’s counselors or case workers, was forcing E.O. to make the statements about sexual abuse.
 

 The father also denied threatening the mother with a gun. He testified that E.O. and S.O. were making up the allegations of abuse. He felt that he benefitted from the domestic violence counseling.
 

 E.O. and S.O. were allowed to testify
 
 in camera.
 
 E.O. answered a few questions about school, and stated that she knew the difference between a truth and a lie, but refused to answer any questions about her parents. S.O. stated that she felt sad and afraid while living with her parents because “they were always hitting each other.” She described physical violence between her parents and between her father and R.R. She believed that E.O. was her father’s favorite child. S.O. also described witnessing her father take out a gun and try to shoot her mother. Her mother’s cell phone was broken because her father stomped on it, so S.O. had to run to a neighbor’s house to call the police.
 

 Dawn Sheehan, a psychologist, testified that she performed psychosexual evaluations on the whole family. She concluded that the father’s psychosexual makeup pre
 
 *176
 
 sented a number of areas of concern because of his pervasive history of violence and aggression and criminal history, but he was not a pedophile. He had a difficult time explaining to Dr. Sheehan the services he had engaged in as part of his case plan. He was not able to relate what groups he was attending and the purposes of those groups. Dr. Sheehan concluded that the father did not have as much investment in the services as one would hope.
 

 Dr. Sheehan was also concerned with the mother’s failure to be forthcoming about the problems in her home. The mother denied any violence in the home, and had difficulty acknowledging personal faults or shortcomings that may have led to her children being removed.
 

 Finally, Dr. Sheehan testified that E.O. had been sexually exposed or abused and that her clinical presentation appeared to be within the spectrum of post-traumatic stress disorder.
 

 Francis Crosby, a licensed clinical psychologist, testified that he evaluated the father in 2006 and in December 2007. In 2006, the father presented a moderate to significant risk for future maltreatment. In December 2007, Dr. Crosby concluded that the father had not progressed and that the risk for future maltreatment had not been lowered, and might have increased. He diagnosed the father with anti-social personality disorder and found that it was highly unlikely that the father’s risk to the children would ever decrease. Dr. Crosby also evaluated the mother in 2006, although he did not re-evaluate her in 2007. In 2006, she presented a moderate to significant risk of future maltreatment.
 

 Lauren Zieman, one of the family’s case managers, testified that she was concerned that the children’s therapy would lapse if they were returned to their parents. She believed that there would be no harm to the children if they were adopted, and that it was in the children’s manifest best interest for the parents’ rights to be terminated. Although the children seem to miss their mother, Zieman did not believe it would be safe for them to return to their mother while she is living with their father.
 

 Charlotte Goode, the children’s guardian ad litem, testified that the allegations of domestic violence and sexual abuse continued to concern her even after the parents completed the tasks in the case plan. She did not believe that the father had benefit-ted from the tasks in the case plan. She testified that the parents continued to lack insight and concern about what is in the best interest of the children. She recommended termination of the parents’ rights.
 

 Goode also testified about E.O.’s reaction to seeing her father during a visit with her mother. E.O. stopped dead, got a vacant stare, became rigid, and would not talk to anyone. Goode tried to talk to the mother about ending her relationship with the father, but the mother became belligerent and accused Goode of stalking her.
 

 On behalf of the parents, several witnesses testified that they were not aware of any violence in the family’s home and that the children all appeared to be well cared-for.
 

 The trial court granted the petition and terminated both parents’ rights to all four girls under section 39.806(l)(c), Florida Statutes (2008). The court found, by clear and convincing evidence, that any further services to the parents would be futile, that there is a high likelihood of harm by the parents if the children were returned to their care, and that there is a high likelihood that the parents’ continuing involvement threatens the life, safety, or well-being of the children. The court re
 
 *177
 
 lied heavily on Dr. Crosby’s testimony that the parents continued to pose a substantial risk of harm to the children, and that they would not benefit from any future services. From this testimony and the other evidence presented in the case, the court concluded that the parents had not complied with the more psychologically meaningful reason for the services in their case plans, despite technical compliance with the plans. The court also found that the parents’ testimony lacked any credibility and was unworthy of belief.
 

 In addition to the ground stated above, the trial court terminated the parents’ rights to E.O. based on section 89.806(l)(f) and (g), Florida Statutes (2008). Finally, the court found that it was in the manifest best interest of all four children that the parents’ rights be terminated in all respects, and that termination was the least restrictive means of protecting the children from further serious harm or abuse.
 

 The parents contest the termination of their parental rights, raising two major arguments. First, they argue that the trial court improperly admitted E.O.’s hearsay evidence because E.O. did not testify at trial. We agree, but hold that the error was not fundamental because there was sufficient corroborating evidence to support the admission of this evidence. Second, the parents argue that DCF did not show a nexus between the father’s sexual abuse of E.O. and any future risk of harm to S.O., R.O., and M.O. We do not have to reach this issue because there is competent, substantial evidence to support termination of the parents’ rights to all four children under section 39.806(l)(c). Thus, we affirm.
 

 Admission of Child Victim Hearsay Evidence
 

 Section 90.803(23), Florida Statutes (2008), allows for the admission of child victim hearsay statements where the statements describe an act of child abuse or neglect. Before these statements are admissible, the trial court must conduct a hearing and make a preliminary determination that they come from a trustworthy source and are reliable. § 90.803(23), Fla. Stat. (2008). Then, the child must either testify at trial or be declared unavailable as a witness.
 
 Id.
 
 If the child is unavailable, the hearsay statements are admissible only if the trial court determines that there is other corroborating evidence of the abuse or neglect.
 
 Id.
 

 In this case, the trial court conducted a hearsay hearing prior to trial, as required by the statute, and determined that E.O.’s hearsay statements were reliable and from trustworthy sources. The parties expected E.O. to testify at trial to meet the second requirement of section 90.803(23). When she refused to testify about her parents, neither party objected or asked the court to find E.O. unavailable as a witness.
 

 The parents argue that the trial court erred by admitting E.O.’s hearsay statements because she did not testify to the subject-matter of her hearsay statements at trial. This issue was not preserved for review because neither parent objected to E.O.’s failure to testify to the subject-matter of her hearsay statements. And, for the reasons discussed below, we do not find any fundamental error.
 

 The parties disagree about whether the child victim must testify to the subject-matter of the hearsay statements to satisfy the requirement in section 90.803(23), or whether testimony on any matter is sufficient. The Second District dealt with this issue in
 
 L.W. v. Department of Health & Rehabilitative Services,
 
 681 So.2d 1181 (Fla. 2d DCA 1996). There, the child victim was unable to testify to any facts relevant to the alleged sexual assault.
 
 Id.
 
 at 1182. She stated that she did not re
 
 *178
 
 member the events.
 
 Id.
 
 The court held that she was unavailable as a witness because of her lack of memory, and that her hearsay statements were admissible only if other corroborative evidence was presented.
 
 Id.
 
 at 1183. The court referenced section 90.804(l)(c), Florida Statutes, which states that a witness is unavailable if he “[h]as suffered a lack of memory of the subject matter of his or her statement so as to destroy the declarant’s effectiveness as a witness during the trial.”
 

 Similarly in this case, E.O. was unavailable under section 90.804(l)(b), Florida Statutes, which states that a witness is unavailable if he or she “[pjersists in refusing to testify concerning the subject-matter of the declarant’s statement despite an order of the court to do so.” E.O. refused to testify about her parents, despite several attempts to elicit such testimony in different ways, and a court order would have served no purpose under these circumstances.
 
 See Peterson v. State,
 
 810 So.2d 1095,1099 (Fla. 5th DCA 2002).
 

 Because E.O. was unavailable to testify, her hearsay statements were admissible only if there was sufficient corroborating evidence of the sexual abuse. Other corroborating evidence is “ ‘evidence other than the alleged child victim’s out-of-court statements which tends to confirm that the charged offense occurred.’ ”
 
 Ghelichkhani v. State,
 
 765 So.2d 185, 190 (Fla. 4th DCA 2000). Here, there was sufficient evidence that E.O. displayed overly-sexualized behavior for her age and that she suffered from post-traumatic stress disorder. Moreover, several witnesses testified that, upon seeing her father during scheduled visits with her mother, E.O. displayed concerning behavior. This combination of evidence tends to confirm E.O.’s hearsay statements that her father sexually abused her.
 

 Accordingly, E.O. was unavailable as a witness and there was sufficient evidence to corroborate her hearsay statements. The trial court did not commit fundamental error by admitting those statements at trial.
 

 Termination of the Parents’ Rights
 

 The parents further argue that the trial court erred by terminating their parental rights to the other three children, S.O., R.O., and M.O., based on E.O.’s sexual abuse. They assert that DCF did not establish a nexus between the sexual abuse inflicted on E.O. by her father and potential abuse to the other three children.
 

 Parents have a fundamental liberty interest in the care, custody and companionship of their children.
 
 Padgett v. Dep’t of Health & Rehabilitative Sens.,
 
 577 So.2d 565, 570 (Fla.1991). Thus, “before parental rights in a child can be permanently and involuntarily severed, the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child.”
 
 Id.
 
 at 571;
 
 see also R.E. v. Dep’t of Children & Families,
 
 996 So.2d 929, 930 (Fla. 4th DCA 2008). In addition, termination must be the least restrictive means of protecting the child, and it must be in the child’s manifest best interest.
 
 D.B. Sr. v. Dep’t of Children & Families,
 
 993 So.2d 1159, 1160 (Fla. 4th DCA 2008). Where the trial court’s finding is supported by competent, substantial evidence on the record, the appellate court must affirm.
 
 D.S. v. Dep’t of Children & Families,
 
 842 So.2d 1071, 1072 (Fla. 4th DCA 2003).
 

 First, we note that the trial court’s decision to terminate both parents’ rights to E.O. is supported by competent, substantial evidence that the father sexually abused E.O. and that the mother refused to end her relationship with the father despite this abuse.
 

 
 *179
 
 We conclude that it is not necessary to reach the issue raised by the parents as to the other three children because DCF presented sufficient evidence to terminate the parents’ rights to all four children under section 39.806(l)(e), Florida Statutes (2008), based on the continued threat of domestic violence in the home. Section 39.806(l)(c) allows a court to terminate parental rights under the following circumstances:
 

 When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
 

 There are three evidentiary requirements for terminating parental rights under this section: (1) that the child’s life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services; (2) that there is no reasonable basis to believe the parent will improve; and (3) that termination is the least restrictive means of protecting the child from serious harm.
 
 L.D. v. Dep’t of Children & Family Servs.,
 
 957 So.2d 1203, 1205 (Fla. 3d DCA 2007). There must be a nexus between the parent’s conduct and the abuse, neglect, or specific harm to the child.
 
 See id.
 
 (quoting
 
 D.P. v. Dep’t of Children & Family Servs.,
 
 930 So.2d 798, 801 (Fla. 3d DCA 2006)).
 

 The evidence at trial showed that the parents had a long-standing domestic violence problem that escalated to the point that the father held a gun to the mother’s head and threatened to kill both the mother and R.R. This violence occurred in front of S.O. While the parents denied the violence, there was sufficient evidence from other sources that this incident, and other instances of violence, occurred. Both S.O. and E.O. testified to witnessing their parents engage in violence, and witnessing their father act violently toward R.R. Although these events happened before the children were adjudicated dependent, they are a cause for much concern. DCF’s case plan was designed to remedy this violent situation to make the family’s home safe for the children.
 

 Despite technical compliance with the case plan, however, the evidence showed that the parents did not meaningfully benefit from the services that were provided to them. Dr. Crosby and Charlotte Goode both recommended that the parents’ rights be terminated to protect the children from future harm. Dr. Crosby testified that it was highly unlikely the father’s risk to the children would decrease with any future services. He diagnosed the father with anti-social personality disorder, and testified that this disorder, combined with his other personality traits, make him a continued risk to the children. Goode also testified that the father had not benefitted from the services provided to him, and that both parents lacked insight and concern about the children’s best interest, even after participating in therapy. From this evidence, the trial court concluded that any future provision of services to the parents would be futile and that it was in the children’s manifest best interest to terminate their rights to all four children. We agree. Although the parents were provided with several opportunities to truly remedy the dangerous situation in their home, they merely went through the motions of their case plan without making any significant effort toward improvement.
 

 
 *180
 
 We note that there was very little evidence presented at trial with regard to M.O. and R.O. It is not clear whether M.O. and R.O. witnessed the violence in the home, although S.O. indicated that all of the girls were crying during the episode where their father threatened to kill their mother and R.R. As a result of this lack of evidence, the case for terminating the parents’ rights to M.O. and R.O. was primarily one of prospective abuse. “In prospective abuse cases, the Department must prove a nexus between the act of abuse and any prospective abuse. The issue in these types of cases is whether future behavior, which will adversely affect the child, can be clearly and certainly predicted. Or, stated another way, whether it is likely to happen or expected.’ ”
 
 J.F. v. Dep’t of Children & Families, 890 So.2d
 
 434, 440 (Fla. 4th DCA 2004) (citations omitted). In this case, there is ample evidence that the father will continue to be a risk to all of the children in the future, and that it is highly unlikely that he will ever improve.
 
 See L.B. v. Dep’t of Children & Families,
 
 835 So.2d 1189, 1195 (Fla. 1st DCA 2002) (A court may find prospective abuse where “the parent is so afflicted that no reasonable basis exists for improvement.”). The trial court properly terminated the parents’ rights to all four children.
 

 Finally, although the mother presented less of a direct risk to the children than the father, the trial court properly terminated her rights because she refused to separate herself and the children from the father. She demonstrated that she cannot provide a safe environment for the children, and that termination of her parental rights is the least restrictive means to protecting the children from future harm.
 

 In sum, the trial court properly terminated the parents’ rights to S.O., E.O., M.O., and R.O. under section 39.806(l)(c), Florida Statutes (2008). We agree with the trial court that the parents continually put their own relationship ahead of their children’s best interest, and that DCF did all it could to try to rehabilitate the parents, to no avail. As such, we affirm.
 

 Affirmed.
 

 GERBER and LEVINE, JJ., concur.
 

 [1]
 

 . R.R., the mother’s teenage son, was not subject to the termination order.
 

 [2]
 

 . DCF did not seek to admit any statements made by M.O. or R.O.