SCHWARTZ, Senior Judge.
A.H., the mother of R.L, D.L., and A.L., appeals from a final judgment terminating her parental rights to those children. We reverse the judgment and remand for further proceedings on the ground that there was no statutory basis to justify this drastic remedy as to any of the children. Specifically, the record is devoid of any, let alone the clear and convincing evidence required to support the termination under section 39.806(l)(c) or 39.806(l)(f), Florida Statutes (2010), as DCF claimed and the trial court found.
The basis of the petition to terminate the mother’s rights was the alleged insufficiency of her attempts to keep the children’s mentally ill and highly abusive father from her home and away from the children. There is no allegation that the mother has otherwise harmed her children or has not provided for their care. With regard to section 39.806(l)(c), the evidence does not remotely establish, as required, that “continued interaction with the [mother] threatens the life, safety, or health of the childfren], and ... that this threat cannot be remedied by the provision of services.”[1] J.C. v. Dep’t of Children & Family Servs., 26 So.3d 665, 665 (Fla. 3d DCA 2010) (quoting In re S.F., 22 So.3d 650, 653 (Fla. 2d DCA 2009)). Here, the evidence showed that, albeit without always following her case safety plan in every respect or achieving success in doing so, the mother conscientiously endeavored — in fact, as an examining psychologist testified, did everything “within her powers” — to protect the children from their offending father. Specifically, those efforts included calling the police or making a report at the station when the father violated the restraining order she had secured against him, leaving with the children to go to another location or a friend’s house when the father showed up unwanted at her home, and making plans to relocate with the children to a gated apartment complex and even out of the country to her native Jamaica. The record also shows that the father was no longer a threat to the children: his parental rights have been terminated and he is subject to a no-contact order; he is incarcerated under felony charges;[2] he had been adjudged incompetent to stand trial; and he is likely to be deported. In sum, this evidence is insufficient to establish that continued interaction with the mother threatens the children’s life, safety, or health; indeed, the possibility of interaction with the father — the basis of the lower court’s ruling — has been alleviated. See C.R. v. Dep’t of Children & Families, 45 So.3d 988 (Fla. 3d DCA 2010) (reversing dependency adjudication, holding that there was no evidence to support the trial court’s finding that the father poses a risk of present or future harm to children caused by the parents’ domestic violence *234 where parents had separated and a permanent injunction precluded contact); M.M. v. Dep’t of Children & Families, 946 So.2d 1287 (Fla. 4th DCA 2007) (reversing dependency adjudication, which requires significantly less stringent showing, as unsupported by the record for mother’s failure to take sufficient action to protect children from mentally ill father); I.R. v. Dep’t of Children & Family Servs., 904 So.2d 583, 586 (Fla. 3d DCA 2005) (reversing termination of mother’s parental rights finding the record inadequate to show that “the parent suffers from a condition that makes probable the prospect of future abuse or neglect of a child and that the condition was one which was likely to continue”). Cf. T.O. v. Dep’t of Children & Families, 21 So.3d 173 (Fla. 4th DCA 2009) (affirming termination of mother’s parental rights where record shows that mother refused to end her relationship with the father despite his abuse of the child and termination of both parent’s rights based on the continued threat of domestic violence in the home).
As to termination under section 39.806(l)(f), the record, again, does not support the trial court’s finding that the mother engaged in conduct that is “deplorable, flagrant, or outrageous by a normal standard of conduct” as the statute provides is required to justify termination. At oral argument, the appellees apparently conceded the lack of evidence as to this ground, and when asked to, could not— because there is none — cite any case in which a parent’s actions or inactions in attempting to protect the children from the offending parent were comparable to those of A.H., and were held to constitute the requisite egregious conduct. It simply cannot be said that she minimized the situation so as to constitute “deplorable, flagrant, or outrageous” conduct in light of the previously described efforts to protect the children. Cf. In re E.R., 49 So.3d 846, 858 (Fla. 2d DCA 2010) (holding that DCF proved that mother engaged in egregious conduct when “[e]ven if she did not witness the abuse [which resulted in the death of the child], she was present in the house and surely knew what was occurring [and][n]evertheless, she chose to conceal her knowledge of the incident and to continue her relationship with the father [and][t]he evidence also suggests that she will knowingly fail to take steps to protect [the other children] from abuse”), cause dismissed, 61 So.3d 411 (Fla.2011), and review denied, 60 So.3d 1054 (Fla.2011); P.I. v. Dep’t of Children & Families, 14 So.3d 1173, 1174 (Fla. 3d DCA 2009) (affirming termination of mother’s parental rights for egregious conduct and abuse where evidence supported trial court’s finding that “there is no way the mother can safeguard the children from [the stepfather]”); A.B. v. Fla. Dep’t of Children & Family Servs., 901 So.2d 324 (Fla. 3d DCA 2005) (affirming dependency adjudication for failure to protect child where mother did not seek assistance after child reported abuse incidents to her).
Reversed and remanded.

. Because the record does not show a continued threat to the children, we do not address whether provision of services would be futile. We do note, however, that in recommending that the court deny the termination petition, Dr. Archer, who conducted a psychological evaluation of the mother, opined that she was not in need of services.

. He had never been jailed for any significant period until he committed the offenses upon and in the presence of the children which touched off the present petition. Ironically enough, therefore, the conduct which caused this proceeding simultaneously made it legally wrong and practically unnecessary.