LaROSE, Judge.
K.G., mother of the minor child, S.V.B., appeals the order terminating her parental rights. We review the trial court’s order to determine whether competent, substantial evidence supports it. R.C. v. Dep’t of Children & Family Servs., 33 So.3d 710, 714 (Fla. 2d DCA 2010). The record contains competent, substantial evidence that the mother engaged in egregious conduct toward the child under section 39.806(1)(f), Florida Statutes (2010). Finding no error, we affirm.
K.G., the child, and the child’s father[1] went out to dinner. Apparently otherwise healthy, the three-month-old child was extremely fussy because it was late and she was hungry. The father was frustrated by the child’s condition. On the way home after dinner, they stopped to shop. KG. went inside a store while the father remained in the car with the child. The child remained fussy and was crying. The father testified that he became frustrated and moved to the back seat to feed the child. The child continued to cry. K.G. was in the store for no more than ten minutes. Upon returning to the car, she saw the father standing outside the car, holding the child and talking on a cell phone. The father testified that the child started to “breathe funny” while he was feeding her; he called 911.
At the hospital, physicians discovered severe injuries. The child’s fontanel, the “soft spot” between the bones of a young baby’s skull, bulged. A CAT scan revealed a subdural hematoma.[2] Doctors performed an emergency craniotomy. Additional testing revealed that the subdural hematoma was an acute bleed. Retinal hemorrhaging and retinal folds presented in both eyes. The child suffers vision problems due to the injuries. The long-term effects on her development remain unknown.
The Department of Children and Family Services (DCF) sheltered the child and filed a dependency petition. Because of the seriousness of the injuries, DCF later filed a petition to terminate the parental rights (TPR) of both parents. The treating physician, Dr. Brooks, a pediatric emergency medicine and child abuse expert, testified at the hearing. He diagnosed abusive head trauma — someone violently shook the child. He opined that the injuries were inflicted within minutes of the 911 call. Dr. Alexander, one of only seven Florida physicians board certified in child abuse pediatrics, testified that the child’s medical history indicated neither chronic hematoma nor any other brain disorder. He concluded that the child’s condition at the emergency room could not have manifested spontaneously. He, too, concluded that someone had shaken the child.
The father provided expert medical testimony that the subdural hematoma was not caused by shaking the child. Rather, the doctor asserted that it began with a prior unrecognized injury weeks or months earlier — likely at birth — and rebled acutely but spontaneously that night. The trial court found this testimony incredible. A biomechanics expert in reconstructing automobile accident injuries testified that it was physically improbable that someone *342 could shake a child so violently that it would cause such an injury. The trial court found this testimony irrelevant and “completely non-persuasive to the facts of this case.”
K.G. testified that she did not believe anything was wrong with the child. She denied that the father caused the injuries. She refused to believe that he would ever harm the child. Yet, K.G. acknowledged that she asked the father if he had shaken or hurt the child. She admitted that they argued about the cause of the injuries. K.G. also tried to obtain a security video of the incident from the store. Obviously, K.G. questioned how her child went from healthy to severely injured in a ten-minute span. Despite her doubts, K.G. maintains her relationship with the father and plans to remarry him. He is her sole financial support.
The trial court found that the father injured the child. The trial court found that KG.’s conduct was egregious and that termination of her rights was the least restrictive means to protect the child. The trial court issued an order terminating K.G.’s and the father’s parental rights. We affirmed the order as to the father. A.B. v. Dep’t of Children & Family Servs., 73 So.Sd 768 (Fla. 2d DCA 2011) (unpubished table decision). The maternal grandparents have custody of the child.
K.G. argues that there is insufficient evidence of egregious conduct. She claims that the father never showed frustration or anger toward the child. K.G. also points to the conflicting medical testimony about the cause of the injuries. Instead of termination, K.G. wants a case plan with a goal of reunification. For the well-being of this child, we cannot agree with K.G.
Termination of parental rights is appropriate when “[t]he parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or child’s sibling.” § 39.806(1)(f). Egregious conduct is “abuse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct.” § 89.806(1)(f)(2). It may include an act or omission that occurred only once but was so severe that it endangered the child’s life. Id. Section 39.809(1) requires DCF to prove each element necessary to terminate parental rights by clear and convincing evidence. R.P. v. Dep’t of Children & Family Servs., 975 So.2d 435, 436 (Fla. 2d DCA 2007). We will not overturn a trial court’s determination that such evidence is clear and convincing unless we can say “ ‘as a matter of law that no one could reasonably find such evidence to be clear and convincing.’” Id. (quoting L.B. v. Dep’t of Children & Families, 835 So.2d 1189, 1194 (Fla. 1st DCA 2002)); see also I.D. v. Dep’t of Children & Families, 13 So.3d 1117, 1119 (Fla. 3d DCA 2009) (stating standard of review for termination of parental rights for egregious conduct is whether competent, substantial evidence supports the order (citing R.P., 975 So.2d at 436)).
K.G. refused to acknowledge that the child suffered injuries from which she likely will never fully recover. Faced with Dr. Brooks’ and Dr. Alexander’s opinions, the apparent frustration displayed that night by the father over the child’s fussiness, and her own doubts, K.G. has refused to recognize the father’s conduct. K.G. made clear that she will continue her relationship with the father and will remarry him. K.G. has placed her self-interest above the well-being of the child. The trial court had ample evidence to conclude that K.G. will not protect the child from the person who caused the severe injuries. The evi *343 dence of egregious conduct was clear and convincing. See R.P., 975 So.2d at 436.
Because K.G. engaged in egregious conduct, DCF is not required to make efforts to reunify the family. See § 39.806(2). The trial court did not err in terminating K.G.’s parental rights.
Affirmed.
BLACK, J., Concurs.
DAVIS, J., Dissents with opinion.

. K.G. and the father were previously married to each other.

. Subdural hematoma, also known as subdural hemorrhage, is a localized mass of clotting blood that has exuded from a vessel into the tissues surrounding the brain. Stedman’s Med. Dictionary 144180, 175540, 178110 (27th ed. 2000).