DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**C.S.,** the father,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES,**
Appellee.

No. 4D15-2097

[November 12, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Hope Bristol, Judge; L.T. Case No. 2013-6788DP.

Antony P. Ryan, Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Fort Lauderdale, for appellee Department of Children and Families.

David P. Krupski, Sanford, for appellee Guardian ad Litem Program.

WARNER, J.

A father appeals a final judgment terminating his parental rights to his child on the grounds of "egregious conduct." That conduct consisted of alleged medical neglect of the child who was born HIV positive but progressed to full-blown AIDS as a result of the failure of the parents to properly care for the child. Because of the literal life-and-death consequences to the child of the failure to provide the proper care, we conclude that the conduct is "egregious" within the meaning of the statute and affirm the termination of parental rights.

The Department petitioned to terminate the father's parental rights, alleging that pursuant to section 39.806(1)(f), Florida Statutes (2013), "the [father] engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental or emotional health of

the minor child. . . ."  It pointed specifically to the father's failure to provide the minor child, born with a blood disorder (HIV), with her medication on a consistent basis.

At the final hearing, the testimony showed that the child, Z.S., was born prematurely in December 2012 and tested positive for the HIV virus at birth.  To prevent the progression of the virus, her treating physician put her on medications.  Because of her prematurity, the baby faced other complications, including being at risk for lung infections, poor weight gain, eating issues and developmental delays.  As a result, the Child Diagnostic and Treatment Center ("CDTC") monitored the progress of the child, both in the hospital and after discharge.

The medical professionals stressed to the parents that strict compliance with the medication regimen and weight gain were critical.  The doctors and social workers gave the parents instructions on how to administer the medications.  According to the treating physicians, the child's medications, if given properly, would have reduced the viral load in the child within weeks or months, and she would have been able to gain sufficient weight.  Instead, the child's viral load numbers did not go down but would fluctuate.  And while she started gaining some weight (about a pound) in the first few months, her weight gain slowed such that in the beginning of September 2013 she was diagnosed with Failure to Thrive.  Throughout the first nine months, the CDTC tried to work with the parents, requiring that the child be enrolled in medical day care.  Yet the parents would not always take her to the day care, where she would have received her medication properly.  And they did not call for assistance.

Although the father testified that he was the parent primarily responsible for administering the child's medication, he also testified that his work took him away for periods of time.  Further, he did not attend most of the child's many doctor appointments.  And in September 2013, the mother had obtained a restraining order against the father for domestic violence, thus removing him from any day-to-day care of the child.

By the end of December, the child's viral load had continued to increase to the point that the child was diagnosed with full-blown AIDS.  The doctor believed the parents were not giving her the medications as directed, and the disease became life threatening.  The Department filed a shelter petition for the child.

After the child was removed from the custody of her parents and placed with a foster mother, she made a quick turnaround.  Within six weeks she had caught up to developmental milestones that she had not been able to

2

achieve in the parents' custody, and her virus became undetectable. The child's growth was adequate in 2014, and she was no longer listed as having a Failure to Thrive; however, she will have the AIDS diagnosis forever. Additionally, the doctor said that because the child's level of virus was so high during her first year of life, she could have a learning disability or other cognitive issues. The foster mother, whose care had resulted in the child's dramatic improvement, had expressed a desire to adopt Z.S.

When asked whether the parents could be rehabilitated to be able to care for the child, the treating physician stated that the parents had been offered all types of counseling and education regarding the child's care for over a year, and the child continued to decline. As the trial court found, "There was nothing else that they as medical professionals could have done for them."

The court concluded that had the father been giving the medicine correctly, Z.S. would not have developed full-blown AIDS. Although the child has a life-threatening illness which could be controlled through medication, the parents had not shown that they could manage her medication consistently, which resulted in life-threatening consequences. On this basis, the court terminated the father's rights. The court noted that, despite considerable intervention by medical professionals, the parents could not be rehabilitated to provide the consistent care the child needed. Termination was in the child's manifest best interest and the least restrictive means to protect the child from harm. The father appeals the court's judgment.

The father argues that his conduct in failing to medically care for his child could not be classified as "egregious" under the statute, and therefore using section 39.806(1)(f), Florida Statutes (2013), was improper. That statute provides:

> (1) Grounds for the termination of parental rights may be established under any of the following circumstances:
>
> . . . .
>
> (f) The parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental or emotional health of the child . . .

"Egregious conduct" is defined in 39.806(1)(f)2. to mean:

> [A]buse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct. Egregious conduct may include an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child.

The standard of review of the final judgment terminating parental rights is whether the trial court's finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence. This is explained in *D.G. v. Department of Children & Families*, 77 So. 3d 201, 206–07 (Fla. 4th DCA 2011):

> [T]he appellate court's task:

> [I]s not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute [its] judgment for that of the trier of fact. Instead, [it] will uphold the trial court's finding "[i]f, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court's judgment in favor of terminating . . . parental rights."

> . . . .

> Where the trial court's finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence, the appellate court has no choice but to affirm.

Given this standard, we conclude that the trial court's finding that the actions of the father constituted egregious conduct is supported by competent substantial evidence. Although the father asserts this was not "deplorable" conduct, the evidence supports that failing to give medication, to such an extent that the child developed AIDS, is deplorable in this case.

The father himself claimed that he was the primary parent responsible for the child's medical regimen. The Department of Children and Families and the Guardian Ad Litem point out that the father's neglect of Z.S.'s medical care directly led to her developing AIDS. The evidence supported, and the trial court found, that the father's conduct qualifies as "egregious," because he knew of Z.S.'s illness and if he had given her medication, as instructed by the doctors, Z.S.'s viral load would have become undetectable within a few months. The professionals worked with both

4

the father and mother for months trying to get them to administer the medications properly to protect the life of their baby, and they failed to heed the medical advice and instruction, knowing the consequences. Instead, the child ended up in a life-and-death situation. Although the father contended that he never received instruction or information concerning her illness, the trial court found his testimony not credible. Knowing her condition, his minimal and inconsistent efforts to deal with her medical condition caused her life-threatening harm. This constitutes egregious conduct.

As found by the trial court, this damage to the child was completely preventable had the father heeded the advice of the medical team treating his daughter. The child will have to live with this diagnosis for the rest of her life, including ancillary complications, which the doctors testified was directly related to the failure to properly and consistently administer medicine. The trial court did not err in terminating the father's rights based upon "egregious conduct."

The father also contends that termination was not the least restrictive means to protect the child from harm. In *Padgett v. Department of Health & Rehabilitative Services*, 577 So. 2d 565, 571 (Fla. 1991), the court explained that "least restrictive means" means that HRS [now DCF] must ordinarily show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan. In cases of egregious conduct toward a child, however, the concept of least restrictive means does not require that a parent be given a case plan. *In re E.R.,* 49 So. 3d 846, 854 (Fla. 2d DCA 2010) (finding that in cases involving egregious conduct by the parent, "the termination of parental rights without the use of plans or agreements is the least restrictive means"). Moreover, in this case the parents already had substantial intervention and training by medical professionals and social workers. As the professionals stated, they had already intervened as much as they could, and the parents could not be rehabilitated to prevent further harm to the child.

The final judgment terminating the father's parental rights to Z.S. is affirmed.

LEVINE and KLINGENSMITH, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

5