DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**T.B.,** the father,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES**
and **GUARDIAN AD LITEM,**
Appellees.

No. 4D19-3862

[July 1, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert B. Meadows, Judge; L.T. Case No. 56-2018-DP000171.

Ashley Nicole Minton of Minton Law, P.A., Fort Pierce, for appellant.

Andrew Feigenbaum, Appellate Counsel, Children's Legal Services, West Palm Beach, for appellee, Department of Children and Families.

Thomasina F. Moore, Statewide Director of Appeals, and Samantha C. Valley, Senior Attorney, Appellate Division, Florida Statewide Guardian Ad Litem Office, Tallahassee, for Guardian Ad Litem.

FORST, J.

One definition of the term *Kafkaesque* is "having a nightmarishly complex, bizarre, or illogical quality." *Kafkaesque*, Merriam-Webster's Online Dict. https://www.merriam-webster.com/dictionary/Kafkaesque> (last visited June 23, 2020). This is the world of Appellant T.B., the father of the two young children (born in 2017 and 2018) involved in this termination of parental rights ("TPR") case. Appellant's parental rights to these children were terminated because, though he complied with Department of Children and Families' ("DCF") case plan and with the instructions of DCF case workers, he occasionally and (arguably) unavoidably came into contact with the children's mother, although mere contact with the mother outside the presence of the children *was not prohibited by the case plan.*

We conclude that the trial court's determination that DCF established, by clear and convincing evidence, the grounds asserted for termination of Appellant's parental rights, is not supported by competent substantial evidence.  Thus, we reverse.

## Background

Appellant's travails started shortly after the birth of his second child in 2018.  Both children were sheltered amidst allegations of domestic violence between Appellant and the mother of the children.  In August 2018, DCF developed a case plan with the goal of reunification of the children with both parents.  Over the course of the next ten months, Appellant met nearly all of the benchmarks of the various case plans he was provided: he completed a batterer's intervention program and parenting classes, and he held two jobs and provided a stable home for the children.  There were occasional instances of domestic violence, but in every instance, it was the mother who was the aggressor, and Appellant was the victim.

Following the first judicial review hearing in January 2019, the following events occurred (and are noted in the trial court's order and/or the testimony of witnesses at the November 2019 TPR hearing):

- Both Appellant and the mother testified that their romantic relationship ended, and the mother moved out of Appellant's home "around" March 2019.
- The mother threw a brick through the window of Appellant's home in April 2019.  Appellant called the police.  The mother was subsequently convicted on the charge of criminal mischief.
- On two occasions in June 2019, the case manager saw Appellant walking with the mother on Orange Avenue (one of the main streets in Fort Pierce).  Appellant testified that he has occasionally, and unintentionally, run into the mother at a bus stop or on a bus route.
- In late August 2019, Appellant arrived at his home and found that the mother had "gained access illegally to [Appellant's] home."  Appellant contacted the police and asked that the mother be removed from the premises.  He also contacted the case manager to report the incident.
- On September 5, 2019, Appellant filed a "Petition for Injunction for Protection Against Stalking" against the mother. This petition was denied by the court.

- A visitation field support worker testified that, in October 2019, while supervising the mother's visits with the children, she witnessed Appellant and the mother communicating via "Facetime." The worker clarified, however, that Appellant interacted only with the children.
- Appellant sent the mother a video of one of his visitations. Appellant testified that this video had been sent to the children's maternal grandmother (with whom the mother was living).

In April 2019, DCF filed a petition for TPR against both parents of the children, and a hearing was convened in November 2019. The mother's parental rights were terminated, and her appeal was dismissed for lack of prosecution. With respect to Appellant, the court found he had completed domestic violence services, continued to maintain stable income and housing, and regularly visited and bonded with the children. The trial court additionally noted that Appellant had taken action to prevent the domestic violence: "he's done everything he could to prevent the domestic violence, including seeking injunction, notify[ing] the police, notify[ing] . . . his caseworker of the ongoing domestic violence [and t]here has been no testimony that he has been the aggressor."

Appellant acknowledged that the mother's actions were harmful to the children and he could not control her actions. He further testified his relationship with the mother had ended and that he had not had any unnecessary and voluntary involvement with her since the relationship ended. He indicated his willingness to consent to a court order requiring the mother to stay away from him and his home, and he also volunteered to catch another bus to avoid the mother, if necessary.

The court nevertheless found that Appellant "voluntarily continu[ed] to have substantial involvement with the Mother which was not necessitated by any explained circumstances." Accordingly, the court determined that Appellant's parental rights must be terminated, reasoning:

> If the Father is voluntarily continuing any relationship with the Mother despite the provision of services to him and he has reason to know the Mother continues to be a danger to the Children, then his rights should be terminated pursuant to § 39.806(l)(c) because he has shown he cannot change his behaviors that helped cause the Children's shelter despite the provision of services. If the Father is continuing a relationship with the Mother and the 2nd Case Plan requires him to discontinue that relationship because Mother continues to be a danger to the Children, then his rights should be terminated

pursuant to § 39.806(1)(e)2 because he failed to achieve the 2nd Case Plan's outcome and is voluntarily engaging in conduct - maintaining a relationship with the Mother - which endangers the Children in the home. The Court finds the Department proved by clear and convincing evidence the parental rights of [Appellant] to the Children should be terminated pursuant to Sections 39.806(l)(c) and (e)2, Florida Statutes.

On appeal, Appellant asserts the trial court erred in terminating his parental rights under sections 39.806(1)(c) and 39.806(1)(e)2. and in finding that termination was in the children's best interest and was the least restrictive means to protect the children.

## Analysis

"The standard of review of the final judgment terminating parental rights is whether the trial court's finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence." *C.S. v. Dep't of Children & Families*, 178 So. 3d 937, 940 (Fla. 4th DCA 2015). "The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." *J.F. v. Dep't of Children & Families*, 890 So. 2d 434, 439 (Fla. 4th DCA 2004).

"[W]e look at the evidence presented, not in the light most favorable to the parents, but in a neutral manner in which we must assess whether competent substantial evidence supports the trial court's conclusion . . . ." *D.G. v. Dep't of Children & Families*, 77 So. 3d 201, 207 (Fla. 4th DCA 2011). "While a trial court's discretion in child welfare proceedings is very broad, reversal is required where the evidence is legally insufficient to sustain the findings of the trial court." *R.S. v. Dep't of Children & Families*, 881 So. 2d 1130, 1132 (Fla. 4th DCA 2004).

### Termination under § 39.806(1)(c)

As noted above, the trial court based the termination on two statutory grounds. The first is section 39.806(1)(c), Florida Statutes (2019), which provides that "[g]rounds for termination of parental rights may be established"

> [w]hen the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the

> continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. . . .

§ 39.806(1)(c), Fla. Stat. (2019).

To terminate a parent's rights under this subpart, three evidentiary requirements must be met:

> (1) that the child's life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services; (2) that there is no reasonable basis to believe the parent will improve; and (3) that termination is the least restrictive means of protecting the child from serious harm.

*T.O. v. Dep't of Children & Families*, 21 So. 3d 173, 179 (Fla. 4th DCA 2009).

We have held that termination under subpart 39.806(1)(c) is termination "based on *prospective* abuse or neglect." *Q.L. v. Dep't of Children & Families*, 280 So. 3d 107, 113 (Fla. 4th DCA 2019). "Essentially, the trial court is asked to look at the parent's *current medical condition or past behavior* and predict whether the parent will likely harm the child in the future." *Id.* at 113-14.

"[T]he evidence must show a parent's past conduct or current mental condition makes the risk of *future* harm to the child likely." *D.B. v. Dep't of Children & Families*, 87 So. 3d 1279, 1282 (Fla. 4th DCA 2012) (emphasis added). The court must determine that "any provision of services would be futile or that the child would be threatened with harm, despite any services provided to the parent." *W.L. v. Dep't of Children & Families*, 172 So. 3d 562, 564 (Fla. 4th DCA 2015) (quoting *In re T.H.*, 979 So. 2d 1075, 1082 (Fla. 2d DCA 2008)).

"The issue in these types of cases is whether future behavior, which will adversely affect the child, can be 'clearly and certainly predicted.' Or, stated another way, whether it is 'likely to happen' or 'expected.'" *J.F. v. Dep't of Children & Families*, 890 So. 2d 434, 440 (Fla. 4th DCA 2004) (internal citations omitted).

In the instant case, Appellant's parental rights were terminated approximately eight months after he ceased living with the mother. There

- 5 -

is no evidence Appellant invited the mother into his house subsequent to their March 2019 breakup and, in fact, Appellant called the police when he found the mother in his home in August 2019. Moreover, Appellant attempted to enjoin the mother from stalking him and, at the termination hearing, he expressed a willingness to cooperate in any efforts by DCF to keep the mother away from the children. Although Appellant was faulted by the court for having "a relationship" with the mother following the March breakup, the two were never ordered to discontinue *all* contact. They were merely instructed to not be together in the presence of the children, and there is no evidence that this instruction was disobeyed.

We are mindful that "a finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support." *B.K. v. Dep't of Children & Families*, 166 So. 3d 866, 873 (Fla. 4th DCA 2015) (quoting *J.E. v. Dep't of Children & Families*, 126 So. 3d 424, 427 (Fla. 4th DCA 2013)). However, there is neither competent nor substantial evidence to support the trial court's conclusions. There is no evidence that Appellant was ever the instigator of domestic violence following the sheltering of the children, let alone that he engaged in domestic violence in their presence. In fact, when discussing Appellant's motion to dismiss the TPR petition,[1] the trial court indicated Appellant had done everything he could to prevent the domestic violence; he was not the aggressor; the mother was no longer living with Appellant; and there was evidence presented both that Appellant was interested in enjoining the mother from having contact with Appellant and the children and that such an injunction might be viable.

Nonetheless, the trial court relied upon the following to support termination of Appellant's parental rights:

> *(1) Appellant communicated with the mother via "Facetime" in several instances when the latter was visiting with the kids.*

Both parties testified that communication between the parents was not prohibited, and the DCF caseworker admitted the communications were more in the vein of Appellant *speaking with his children.*

> *(2) Appellant and the mother were twice seen walking together on Orange Avenue in Fort Pierce.*

---

[1] The trial court reserved ruling on Appellant's motion to dismiss and never rendered a final ruling on this motion.

Appellant testified he and the mother were no longer in a "relationship" at that point and any contact was coincidental, as they both walked on Orange Avenue to get to the bus stop and to various appointments. Moreover, the case plans did not include a "no contact" requirement, only that "[they] cannot be around each other *in front of the children.*"

### *(3) Domestic violence between the parents continued throughout the case, even after the children were sheltered.*

There was one instance of domestic violence after the children were sheltered. In attempting to regain his children, Appellant broke up with the mother and had her move out of his home. The mother responded by throwing a brick through Appellant's window, leading to Appellant calling the police, and the mother being arrested and criminally charged, convicted, and, for a time, incarcerated. Later, after the mother gained illegal entry to Appellant's house, Appellant again called the police and case worker and sought an injunction to prevent further incursions. There is NO evidence that Appellant invited or enabled the hostile actions of the mother; to the contrary, he reported these actions to the case worker and to the police, he sought an injunction against the mother, and he expressed a willingness to do so again.

Appellant has no discernable criminal or drug abuse record, had maintained stable housing for the children to live in, was gainfully employed, was bonded with the children, and had not exhibited anger management issues since the children were sheltered. Following his March 2019 breakup with the mother, there is no evidence that Appellant had anything other than incidental contact with the mother, *with no voluntary contact,* incidental or otherwise, witnessed or testified to in the four months preceding the TPR hearing. Thus, there is no evidence supporting a finding of an "ongoing domestic violence threat." The last act of domestic violence occurred approximately eight months prior to the TPR hearing and resulted in the mother's arrest and conviction. Her parental rights have now been terminated.

Unlike the parent in *T.O.,* Appellant made conscious and discernable efforts to separate himself and the children from the other parent, essentially succeeded in doing so, and demonstrated that he could provide a safe environment for the children. *Contra T.O.,* 21 So. 3d at 180 (holding "there is ample evidence that the father will continue to be a risk to all of the children in the future, and that it is highly unlikely that he will ever improve"). "When improvement is demonstrated and further improvement is possible, it is error to terminate parental rights under subpart

39.806(1)(c)." *Q.L.*, 280 So. 3d at 116 (citing *In re J.B.*, 923 So. 2d 1201, 1207 (Fla. 2d DCA 2006)).

As noted previously, the sole contact between the parents during the four months preceding the TPR hearing was the mother's trespass in August 2019. This encounter resulted in Appellant's calling the caseworker and the police and seeking a restraining order against the mother. In determining that Appellant is unable to desist from engaging in a relationship with the mother, the trial court engages in rank speculation, unsupported by the record. Parental rights cannot be terminated based on such speculation. *Q.L.*, 280 So. 3d at 115 (citing *S.S. v. D.L.*, 944 So. 2d 553, 559 (Fla. 4th DCA 2007) for the proposition that "non-expert speculation is not a sufficient basis for terminating parent rights.").

The trial court erred in finding that DCF established Appellant's past conduct made future harm to the children likely to happen, and it similarly failed to establish there was no reasonable basis to conclude that past behaviors will improve. Thus, the termination under § 39.806(1)(c) cannot stand.

**Termination under § 39.806(1)(e)2.**

The trial court's second statutory basis for termination was section 39.806(1)(e)2., Florida Statutes (2019), which states that grounds for termination of parental rights may be established:

> (e) When a child has been adjudicated dependent, a case plan has been filed with the court, and:
>
> . . . .
>
> 2. The parent or parents have materially breached the case plan by their action or inaction. Time is of the essence for permanency of children in the dependency system. In order to prove the parent or parents have materially breached the case plan, the court must find by clear and convincing evidence that the parent or parents are unlikely or unable to substantially comply with the case plan before time to comply with the case plan expires.

§ 39.806(1)(e)2.

The trial court found that Appellant had completed all tasks set forth in the case plan.  The "material breach" was apparently the several instances in which Appellant communicated with the mother between their breakup in March 2019 and the mother's trespass in August 2019.  From these informal contacts, *not prohibited by the case plan*, DCF and the trial court determined that Appellant was "unlikely or unable to substantially comply with the case plan," *even though he actually had complied with the case plan.*  T.B., meet F.K. (Franz Kafka).  The trial court's TPR under this statutory provision is not supported by any evidence, let alone competent substantial evidence, as there has been no breach, let alone a "material breach."

**Termination of Appellant's Parental Rights was not in the Children's Manifest Best Interests and was not the Least Restrictive Means of Protecting the Children from Serious Harm.**

There was no competent substantial evidence that the manifest best interests of the children were served by the termination of Appellant's parental rights.  There was testimony that the children were bonded with Appellant and that he cared for and provided for the children.  Nor was there competent substantial evidence that the termination of Appellant's parental rights was the least restrictive means to protect the children.  In light of the termination of the mother's parental rights, the least restrictive means of protecting the children would have been for DCF to assist Appellant, the victim of domestic violence, in gaining an injunction against the mother under Chapter 39 (if necessary).

**Conclusion**

DCF's petition for TPR acknowledged that Appellant had "stable income and housing" and that the two children were "very bonded" with him.  Nonetheless, DCF requested termination of Appellant's parental rights because he "continues to prioritize the mother over the children."  That petition was submitted in April 2019.  In the months that followed, Appellant had minimal contact with the mother for several months and then severed all contact with her and sought a restraining injunction.  Appellant materially complied with the case plan in every respect, though he was faulted for not terminating all contact with the mother, notwithstanding the fact that a prohibition of contact between the two was not required by any of the case plans.

> [P]arents have a fundamental liberty interest in the care, custody, and management of their children.  *Santosky v. Kramer*, 455 U.S. 745, 754 (1982).  The fundamental liberty

- 9 -

interest of natural parents "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Id.* at 753[.] To justify termination of parental rights, the State has the burden to show by clear and convincing evidence that reunification with the parent poses "a substantial risk of significant harm" to the child, such as abuse, neglect or abandonment. *Padgett v. Dep't of Health & Rehabilitative Servs.*, 577 So. 2d 565, 571 (Fla. 1991); *W.W. v. Dep't of Children & Families*, 811 So.2d 791, 793 (Fla. 4th DCA 2002).

*In re J.B.*, 923 So. 2d at 1205.

The State's Department of Children and Families failed to meet its burden in this case. Just as no "substantial" relationship between Appellant and the mother existed past March 2019, roughly eight months prior to the trial court's termination order, there was not clear and convincing evidence of a "substantial" risk of "significant" harm to the children if they were to be reunited with their father. Contrary to the holding of the trial court, Appellant demonstrated that he could (*and actually did*) "change his behaviors that helped cause the Children's shelter."

As noted above, DCF failed to prove grounds for termination under either of the statutory provisions offered as the basis for the petition of termination of parental rights. Thus, we reverse and remand for proceedings consistent with this opinion.

*Reversed and Remanded.*

GROSS and GERBER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**