DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**M.P.,** the Mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES** and
**GUARDIAN AD LITEM PROGRAM,**
Appellees.

No. 4D21-1127

[September 1, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Yael Gamm, Judge; L.T. Case No. 18-1694DP.

Sean Conway of Sean Conway Law Firm, P.A., Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Fort Lauderdale, for appellee Department of Children and Families.

Thomasina F. Moore, Statewide Director of Appeals, and Samantha C. Valley, Senior Attorney, Tallahassee, for appellee Guardian Ad Litem.

CIKLIN, J.

The mother of three children appeals the order terminating her parental rights, which was based on a finding of egregious conduct.[1] She disputes that she engaged in egregious conduct by allowing the father of two of the children to have contact with the oldest child, N., after his parental rights were terminated for sexually abusing N. She also asserts that the trial court erred in finding termination was in the manifest best interests of the children and the least restrictive means of protecting them from harm. The record before us belies the mother's arguments and we affirm.

---

[1] "Egregious conduct" is defined as "abuse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct." § 39.806(1)(f)2., Florida Statutes (2020).

In 2018, the Department of Children and Families (DCF) filed a shelter petition, alleging that N. had reported sexual abuse by her father. The children remained in the mother's custody under DCF's protective supervision. The trial court entered a final injunction for protection against child abuse or domestic violence, which barred the father from having any contact with the children and from being within 500 feet of their residence. DCF then petitioned to terminate the father's parental rights. During the adjudicatory hearing, DCF presented substantial evidence establishing that the father molested the child on numerous occasions, and the court terminated the father's parental rights. The termination judgment required the mother to enroll N. in counseling and to ensure her attendance. The judgment further required the mother to attend counseling to enhance her protective capacities and for the purpose of executing a safety plan to ensure the father had no contact with the children.

In October 2018, the mother signed a safety plan, which provided that the father would have no contact with the children and that N. and the mother would attend counseling. The mother was referred to services but made no progress initially. In response, DCF filed a dependency petition in January 2019, alleging that the mother lacked protective capacity. The mother consented to a withhold of adjudication of dependency based on the allegation that her conduct subjected N. to a substantial risk of an imminent threat of harm. The disposition order provided that "[t]he Mother shall ensure that [the father] has no contact with [N.]" The mother ultimately completed the case plan tasks, including therapy for herself and for N. Based on DCF's recommendation, the trial court terminated supervision in June.

About one year later, in July 2020, DCF petitioned to shelter the children, alleging a domestic violence incident involving the mother, father, and N. The children were sheltered with their maternal grandmother, and the mother was granted supervised visitation. Subsequently, DCF filed an expedited petition for termination of the mother's parental rights as to all three children, alleging that law enforcement responded to the mother's home based on a 911 call. N. heard the mother and father arguing in the middle of the night and went into the mother's bedroom and witnessed the father choking the mother. When N. attempted to intervene, the father struck and choked N., and also pulled hair out of her head. N. reported that the father was frequently visiting the children at the mother's home. DCF consequently alleged the mother engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatened the life, safety, or physical, mental, or

emotional health of the minor child or that child's sibling(s), and that the mother lacked protective capacity.

The case proceeded to an adjudicatory hearing. The evidence established that the mother participated in domestic violence counseling and parenting classes while the termination case was pending. Various service providers reported that the mother had successfully completed the programs and visited the children daily, providing the bulk of their care. However, in addition to the domestic violence incident, there was evidence that the father visited the home while the children were present on numerous occasions, beginning just weeks after the father's parental rights were terminated. The mother acknowledged her relationship with the father had never ended.

The trial court entered an order terminating the mother's parental rights based on egregious conduct, finding that the mother allowed N.'s sexual abuser to have contact with her for two years, and observing that the conduct was "compounded by the violence which ensued . . . at the hands of [the father,] violence that could have, and should have, been prevented by the Mother's adherence to the court orders and any semblance of protective capacity."

The mother's primary argument on appeal relates to the ground for termination: egregious conduct. DCF sought termination of parental rights based on section 39.806(1)(f), Florida Statutes (2020), which permits termination when "[t]he parent . . . engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling." Under such circumstances, "[p]roof of a nexus between egregious conduct to a child and the potential harm to the child's sibling is not required." *Id.*[2] "Egregious conduct" is defined as "abuse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct." § 39.806(1)(f)2., Fla. Stat. (2020). Further,

---

[2] This court recently certified to the Florida Supreme Court the question of whether the 2014 amendment to section 39.806(1)(f), Florida Statutes, is unconstitutional because it relieves the state of the burden of proving that the egregious conduct poses a substantial risk of harm to each sibling and is the least restrictive means protecting the siblings from serious harm. *V.S. v. Dep't of Child. & Fams.*, No. 4D20-1833, 2021 WL 3377501, at *1 (Fla. 4th DCA Aug. 4, 2021). The mother does not argue in this appeal that the amendment is unconstitutional.

"[e]gregious conduct may include an act or omission that occurred only once but was of such intensity, magnitude, or severity as to endanger the life of the child." *Id.*

The mother frames the termination as based on her mere violation of court orders and the single domestic violence incident, which she believes is not sufficient to establish egregious conduct. But the mother's reading of the final judgment is disingenuous. The trial court based termination on the mother's conduct of allowing the father continued access to the children despite her knowledge of the father's sexual abuse of N. The evidence supported termination on this ground. The mother testified during the adjudicatory hearing that she believed N.'s allegations of abuse. But while the mother was completing her case plan tasks in her dependency case, she was simultaneously allowing the father to have contact with the children. This was not a one-time occurrence and, in fact, the father visited often. In essence, the mother repeatedly placed N. in harm's way in order to satisfy herself. This amounts to conduct that is "outrageous by a normal standard of conduct."

The mother asserts no evidence showed that the father's visits to the home resulted in any mental or psychological harm to N. or any of the children. However, the statute doesn't require actual harm. Rather, it requires that the egregious conduct "*threatens* the . . . mental, or emotional health of the child or the child's sibling." § 39.806(1)(f), Fla. Stat. (2020) (emphasis added). Despite the mother's assertion to the contrary, there was testimony in this case as to how the abuse negatively impacted the child's emotional health.

The mother also argues less restrictive measures other than could have been utilized, such as the trial court's contempt powers. "[B]ecause parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm." *Padgett v. Dep't of Health & Rehab. Servs.*, 577 So. 2d 565, 571 (Fla. 1991). To satisfy this requirement, DCF "must ordinarily show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan." *C.S. v. Dep't of Child. & Fams.*, 178 So. 3d 937, 941 (Fla. 4th DCA 2015). However, "[i]n cases of egregious conduct toward a child . . . the concept of least restrictive means does not require that a parent be given a case plan." *Id.*; *see also In re: S.V.B.*, 93 So. 3d 340, 343 (Fla. 2d DCA 2012) ("Because [the parent] engaged in egregious conduct, DCF is not required to make efforts to reunify the family."). As this court recently recognized, "[a]s to the siblings, the legislature has abrogated the least restrictive means inquiry for

4

'egregious conduct' cases, among others." *V.S. v. Dep't of Child. & Fams.*, 46 Fla. L. Weekly D1329, 2021 WL 2346077, at *8 (Fla. 4th DCA June 9, 2021) (citing § 39.806(2), Fla. Stat. (2020)).

While the mother suggests that the trial court could have protected the children by exercising its contempt powers, nothing indicates the mother would have changed her behavior based on potential findings of contempt. Here, competent substantial evidence supported the trial court's finding that termination of parental rights was the only way to protect the children.

Finally, the mother contends that termination was not in the manifest best interests of the children, as they have a strong bond with the mother, who is very involved in the children's care. Pursuant to section 39.810, Florida Statutes (2020), the trial court made detailed findings on the factors relevant to the manifest best interests of the children, including the bond between the mother and the children. The mother does not challenge any of the trial court's findings. Rather, she seems to assert that the bond between herself and the children is a dispositive factor. She is wrong and her position is not supported by the law. *See Dep't of Child. & Fam. Servs. v. M.J.,* 889 So. 2d 986, 988 (Fla. 4th DCA 2004) (holding trial court erred in denying termination "because some of the children did not want to sever all ties to the mother," and explaining that "the fact that some of the children were against termination" was not sufficient cause to deny termination "in light of the findings of the trial court that the father's sexual deviancy places the children at extreme risk and the mother refuses to protect the children from him"). Additionally, we decline the mother's apparent invitation to reweigh the manifest best interests factors. *See J.P. v. Fla. Dep't of Child. & Fams.,* 183 So. 3d 1198, 1204 (Fla. 1st DCA 2016) ("Reweighing the evidence at the appellate level would violate the highly deferential standard we must apply.").

Based on the foregoing, we affirm.

*Affirmed.*

GERBER and FORST, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***